# MORTGAGE NOTE

$300,000.00

August 17, 2005

FOR VALUE RECEIVED, **ATLANTIS MANAGEMENT, LLC**, a Rhode Island limited liability company (sometimes referred to herein as the "LLC"), and **TAREK WEHBE**, both with a mailing address of 1630 Mineral Spring Avenue, North Providence, Rhode Island 02904 (hereinafter jointly and severally referred to as "Maker"), jointly and severally promise to pay to the order of **THE WASHINGTON TRUST COMPANY**, a Rhode Island financial institution with its principal place of business at 23 Broad Street, Westerly, Rhode Island 02891 (hereinafter referred to as "Payee"), the principal sum of Three Hundred Thousand and 00/100 ($300,000.00) Dollars payable at the times hereinafter specified, together with interest, in arrears, from the date hereof on the unpaid principal balance from time to time outstanding, whether before or after the maturity of or default under this note, at the rate of seven and eighteen one hundredths percent (7.18%) per annum (the "Interest Rate") which Interest Rate is the seven (7) year Amortizing Advance Rate, as made available from time to time by the Federal Home Loan Bank of Boston, plus two and one-half percent (2.5%).

All interest payable hereunder shall be computed on the basis of the actual number of days elapsed using a three hundred sixty (360) day year.

Principal and interest hereunder shall be payable in eighty-three (83) consecutive equal monthly installments, based on a twenty year amortization, of Two Thousand Three Hundred Eighty and 00/100 ($2,380.00) Dollars each, commencing on the 17th day of September, 2005, and continuing on the same day of each month thereafter, and in one (1) final installment of the entire unpaid balance of principal and interest on the 17th day of August, 2012 (the "Maturity Date").

All sums payable hereunder are payable in lawful money of the United States of America and in immediately available funds at the above stated office of Payee or such other place or places as Payee, its successors or assigns (the "Holder") may designate in writing. The LLC hereby irrevocably authorizes the Holder to charge from time to time against the LLC's accounts with the Holder all payments of principal, interest and other sums then due and payable hereunder.

The Maker may prepay the indebtedness evidenced by this note in whole or in part at any time upon thirty (30) days prior notice to the Holder (the "Prepayment Notice") and the payment to the Holder of a fee (the "Prepayment Fee"). The Prepayment Fee shall be the Net Loss (as defined below) that the Holder sustains or incurs as a result of such prepayment. As used herein, the term "Net Loss" means the Discounted Cost of Funds Differential (as those terms are defined below).

The Discounted Cost of Funds Differential shall be computed by the Holder as follows:

(a) The Holder shall calculate the monthly interest that would be earned on the principal amount of this note being prepaid at the Interest Rate for each month remaining until the Maturity Date (the "Termination Date"). The result is the "Monthly Cost of Funds Payment."

(b) The Holder shall then calculate the monthly interest that would be earned by reinvesting the principal portion of the amount being prepaid at the Reinvestment Rate (defined below) for each month remaining until the Termination Date. The result is the "Monthly Reinvestment Payment." The "Reinvestment Rate" shall mean the rate identified by the Holder, as of the date the Holder receives the Prepayment Notice, as the rate available to the Holder and other money center banks doing business in Rhode Island (as published in the applicable Federal Reserve statistical release designed by the Holder) for the investment in U.S. Treasury Obligations ("Treasury Obligations") of an amount equal to the principal amount prepaid, with maturities closest to, or coterminous with, the Termination Date. If, for any reason, a quotation is unavailable for such date, quotations for the next preceding date for which such quotations are available shall be used. If the Holder identifies more than one Treasury Obligation having the same maturity date, the Treasury Obligation having a coupon interest rate closest to the Interest Rate

ALL-STATE LEGAL® Exhibit A

shall be employed.

(c) Each Monthly Reinvestment Payment shall then be subtracted from the corresponding Monthly Cost of Funds Payment. The result, if positive, is the "Monthly Payment Differential." The Monthly Payment Differential shall in no event be less than zero.

(d) Each Monthly Payment Differential from the prepayment date to the Termination Date shall then be discounted to present value at the Reinvestment Rate on a monthly basis. The result is the "Discounted Monthly Payment Differential."

(e) All of the Discounted Monthly Payment Differential amounts shall then be added together and such aggregated amount shall constitute the Discounted Cost of Funds Differential.

Notwithstanding the Prepayment Fee specified above, if, after the Maker has provided the Prepayment Notice, prepayments are actually made during the thirty (30) day period immediately preceding the Maturity Date, there shall be no Prepayment Fee.

If this note shall be accelerated for any reason whatsoever, the applicable Prepayment Fee in effect as of the date of such acceleration shall be paid. All partial prepayments of principal shall be accompanied by and applied first to the payment of unpaid late charges, then to accrued and unpaid interest and the balance on account of the unpaid principal in the inverse order of maturity. Such partial prepayments shall not affect the Maker's obligation to make the regular installments required hereunder until the indebtedness evidenced by this note is fully paid.

All other sums paid under this note shall be applied first to any interest, fees, expenses and other charges then due and unpaid, in such order as the Holder shall determine, with the remaining balance, if any, to be applied to unpaid principal.

Whenever a day on which payment of interest and/or principal required to be made hereunder falls on a Saturday, Sunday or public holiday, such payment shall be due on the next following normal business day, and where time is extended for the payment of principal by virtue of the due date thereof falling on a Saturday, Sunday or public holiday, such extended time shall be included in the computation of interest.

√ This note is secured by the Security Documents.

Payee and any successor Holder may assign, transfer or negotiate this note and any security for the performance of Maker's obligations hereunder, and in such event all the provisions of this note, the Loan Agreement and the Security Documents shall inure to the benefit of and may be exercised by or on behalf of the successor Holder, and all payments of principal and interest due and to become due under this note shall not thereafter be subject to any defense, counterclaim or set-off which Maker may have against any prior Holder.

This note is the Note referred to in, and is entitled to the benefits of, that certain Loan Agreement between Maker and Payee of even date herewith (the "Loan Agreement"). The applicable terms and provisions of the Loan Agreement are incorporated herein by reference as if fully set forth herein. Each capitalized term used in this note and not expressly defined herein shall have the meaning ascribed to such term in the Loan Agreement. The Loan Agreement, among other things, contains provisions for acceleration of the maturity of this note upon the happening of certain stated events and also for prepayments and other required payments on account of the principal balance outstanding hereunder prior to the maturity of this note upon the terms and conditions specified in the Loan Agreement.

Upon the occurrence of any Event of Default, this note, at the option of the Holder, shall become immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Maker and by the Guarantor. The Holder's failure to exercise such option

shall not constitute a waiver of the right to exercise it at any other time. Irrespective of the exercise or nonexercise of the foregoing option, (i) in the event that any payment herein provided for shall become overdue for more than ten (10) days a "late charge" equal to the greater of five percent (5%) of the overdue payment or $35.00 shall become immediately due and payable to the Holder as liquidated damages for failure to make prompt payment and (ii) the Holder may, at its option, increase the applicable interest rate hereunder, to the extent permitted by law, to a rate per annum equal to five percent (5%) above the rate of interest otherwise payable hereunder.

Maker agrees to notify Holder promptly in writing, and in any event within ten (10) days, of the occurrence of any event or condition which constitutes an Event of Default hereunder, or which with the giving of notice or passage of time or both, would constitute such an Event of Default. Failure to so notify Holder shall be an Event of Default hereunder.

No renewal or extension granted, or any indulgence shown to, or any release of, or any dealings between the Holder and any other person, corporation, or entity now or hereafter interested in this note or in the property securing this note, whether as owner, encumbrancer, grantor, or otherwise, shall discharge, extend or in any way affect the obligations of Maker or the Guarantor hereunder.

Maker shall remain primarily liable on this note, the Loan Agreement and the Security Documents given to secure the same until full payment, unaffected by any alienation of all or any part of the property securing this note, by any agreement or transaction between any Holder and any alienee as to payment of principal, interest or other monies, by any forbearance or extension of time, guaranty or assumption by others, or by any other matter, as to all of which notice is hereby waived by Maker.

Maker will pay the legal and other fees and expenses of the Holder reasonably incurred in connection with or incidental to (i) the negotiation, closing and administration of the loan evidenced by this note, and (ii) the enforcement of any of the obligations of Maker or rights of the Holder under this note, the Loan Agreement, the Security Documents or any other agreement, document or instrument now or hereafter executed in connection herewith, by litigation or otherwise; and all such fees and expenses shall be indebtedness under this note and shall be secured by the Security Documents.

All provisions of this note, the Loan Agreement and the Security Documents are expressly subject to the condition that in no event, whether by reason of acceleration of the maturity of the indebtedness evidenced hereby or otherwise, shall the amount paid or agreed to be paid to Payee hereunder and deemed interest under applicable law exceed the maximum rate of interest on the unpaid principal balance of this note allowed by applicable law (the "Maximum Allowable Rate"), which shall mean the law in effect on the date of this note, except that if there is a change in such law which results in a higher Maximum Allowable Rate being applicable to this note, then this note shall be governed by such amended law from and after its effective date. In the event that fulfillment of any provision of this note, the Loan Agreement or any of the Security Documents results in the interest rate hereunder being in excess of the Maximum Allowable Rate, the obligation to be fulfilled shall automatically be reduced to eliminate such excess. If, notwithstanding the foregoing, Payee or any successor Holder receives an amount which under applicable law would cause the interest rate hereunder to exceed the Maximum Allowable Rate, the portion thereof which would be excessive shall automatically be applied to and deemed a prepayment of the unpaid principal balance of this note and not a payment of interest.

The Maker expressly waives presentment, notice of acceleration and intent to accelerate, demand for payment and protest and notice of protest and nonpayment.

All obligations of Maker hereunder are the joint and several obligations of the LLC and Tarek Wehbe, and all references to Maker herein shall be deemed to refer to, both of them, each of them and either of them.

Regardless of the adequacy of any collateral or other means of obtaining repayment of this note, Payee is hereby authorized at any time and from time to time upon the occurrence of an Event of Default,

without notice to Maker (any such notice being expressly waived by Maker) and to the fullest extent permitted by law, to set off and apply deposits (general, special, time or demand, provisional or final) of Maker against the payment of any of the obligations and indebtedness of Maker evidenced hereby, whether or not Payee shall have made any demand for payment of such obligations and indebtedness.

MAKER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN AGREEMENT, THE SECURITY DOCUMENTS OR ANY OF THE OTHER DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR PAYEE TO ACCEPT THIS NOTE AND TO MAKE THE LOAN EVIDENCE HEREBY.

This note may not be modified or terminated orally.

This note has been executed and delivered in Rhode Island and for all purposes shall be enforced and construed in accordance with the substantive law of the State of Rhode Island, without resort to Rhode Island's conflict of laws rules.

IN WITNESS WHEREOF, Maker has executed as of the date first above written.

WITNESS AS TO BOTH: SUSAN GORSHKOFF

ATLANTIS MANAGEMENT, LLC

By: ______________________
Tarek Wehbe, Member

______________________
Tarek Wehbe, Individually

(11)

DOC NO: 00007641
BOOK 2146 PAGE 1

# MORTGAGE DEED AND SECURITY AGREEMENT

This Mortgage Deed and Security Agreement is made this 17th day of August, 2005, by and between **ATLANTIS MANAGEMENT, LLC**, a Rhode Island limited liability company with its principal place of business at 1630 Mineral Spring Avenue, North Providence, Rhode Island 02904 (the "Mortgagor") and **THE WASHINGTON TRUST COMPANY**, a Rhode Island financial institution with its principal office at 23 Broad Street, Westerly, Rhode Island 02891 (the "Mortgagee").

## KNOW ALL MEN BY THESE PRESENTS:

That the Mortgagor hereby grants, bargains, sells, conveys, assigns, grants a security interest in and releases unto Mortgagee, its successors and assigns, forever the following described real and personal property:

(a) that certain parcel of land known as 1630 Mineral Spring Avenue, Town of North Providence, State of Rhode Island, and more particularly described in Exhibit A attached hereto and made a part hereof (the "Premises"); (b) all buildings and improvements now or hereafter situated upon the Premises, together with all fixtures now or hereafter owned by Mortgagor or in which Mortgagor has an interest, and placed in or upon the Premises or the buildings or improvements thereon (the "Improvements"); (c) all easements, licenses, privileges, hereditaments and appurtenances belonging to or inuring to the benefit of the Premises; (d) all fixtures, machinery, equipment and other personal property of every kind, description and nature whatsoever, now or hereafter located in or upon or affixed to the Premises or Improvements, or any part thereof, or now or hereafter used or to be used in connection with any present or future operation of the subject property, and now owned or hereafter acquired by Mortgagor, including, without in any way limiting the generality of the foregoing: any and all (i) heating, lighting, incinerating, refrigerating, ventilating, air conditioning, air cooling, lifting, fire extinguishing, plumbing, cleaning, communications and power equipment and apparatus; (ii) gas, water and electrical equipment; and (iii) elevators, escalators, switchboards, engines, motors, tanks, pumps, partitions, conduits, ducts and compressors; together with any renewals, replacements or additions thereto or substitutions therefor; (all hereinafter collectively referred to as the "Personal Property"); it being understood and agreed that all the Personal Property is a part of and is declared to be a portion of the security for the indebtedness hereby secured, whether physically attached to the Improvements or not.

The Premises, the Improvements and all of such other property hereby granted and conveyed are hereinafter collectively referred to as the "Mortgaged Property."

TOGETHER WITH: (a) all insurance proceeds, awards and other amounts paid for any damage or loss to the Mortgaged Property, or any part thereof, including interest, arising from fire or other casualty or from or in connection with any condemnation or other taking of the Mortgaged Property, or any part thereof, in accordance with the provisions, terms and conditions hereinafter set forth; and all of the records and books of account now or hereafter maintained by the Mortgagor in connection with the operation of the Premises; (b) all of the issues, benefits and profits of the Mortgaged Property; (c) a security interest in and assignment of all of the right, title and interest of Mortgagor, in and to all leases, subleases, occupancy agreements, licenses, concession agreements and all other agreements or tenancies, however denominated, whether written or oral, now or hereafter existing with respect to any portion or portions of the Mortgaged Property together with any amendments, renewals or extensions thereof and all leases, subleases and tenancies in substitution therefor (all of which are hereinafter collectively referred to as the "Leases"); (d) all rents and other payments of every kind due or payable and to become due or payable to Mortgagor by virtue of the Leases, or otherwise due or payable and to become due or payable to Mortgagor as the result of any use, possession or occupancy of any portion or portions of the Mortgaged Property (all of which are hereinafter collectively referred to as the "rents"); and (e) a security interest in and to all of the records and books of account now or hereafter maintained by Mortgagor in connection with the operation of the Mortgaged Property.

SUBJECT, HOWEVER, to those certain liens, encumbrances and other matters, if any, set forth in Exhibit "B".

TO HAVE AND TO HOLD the Mortgaged Property, together with all the foregoing appurtenances unto and to the use of Mortgagee and its successors and assigns forever.

This conveyance is made to secure:

(1) Payment of the Mortgagor's and Tarek Wehbe's Mortgage Note in the principal amount of Three Hundred Thousand and 00/100 ($300,000.00) Dollars of even date herewith payable to the order of the Mortgagee, together with interest at the rate specified in said Mortgage Note, and any and all extensions, modifications, and renewals thereof and substitutions therefor, which Mortgage Note and any substitute, extension or replacement note is hereinafter referred to as the "Note".

(2) Payment by Mortgagor to Mortgagee of all sums expended or advanced by Mortgagee pursuant to any term or provision of this Mortgage;

(3) Performance and observance by Mortgagor of each and every covenant, condition and obligation contained in the Note, this Mortgage, or any other document, instrument or agreement given by Mortgagor as additional security for the payment of the indebtedness hereby secured, or otherwise executed in connection therewith, including, without limitation, a Loan Agreement between, inter alia, Mortgagor and Mortgagee, an Assignment of Leases and Rents between Mortgagor and Mortgagee and an Environmental Indemnity Agreement between, inter alia, Mortgagor and Mortgagee, all of even date herewith (hereinafter collectively referred to as the "Security Instruments")

(4) Payment of all other indebtedness now or hereafter owing by Mortgagor to Mortgagee, whether on open account or represented or evidenced by check, promissory note or otherwise, and whether as principal obligor or as surety, endorser, guarantor or otherwise, and whether or not otherwise secured.

**Section 1. Covenants and warranties.**

The Mortgagor covenants, warrants and agrees as follows:

1.1 Mortgagor is the true, sole and lawful owner of the Mortgaged Property, is lawfully seized and possessed of the same in fee simple, and has good right, full power and lawful authority to grant, bargain, sell and convey the same in the manner aforesaid; that Mortgagee shall at all times hereafter, by virtue of these presents, lawfully, peaceably and quietly have and enjoy the Mortgaged Property; that the Mortgaged Property is free from all encumbrances, except as may be set forth in said Exhibit B. and that Mortgagor will warrant and defend the Mortgaged Property to Mortgagee forever against the lawful claims or demands of all persons whatsoever, except the holders of the encumbrances set forth in said Exhibit B.

1.2 Mortgagor shall pay all indebtedness hereby secured at the time or times and in the manner provided herein, in the Note, or in any other instruments secured hereby.

1.3 Mortgagor will promptly and fully keep, perform and comply with all the terms, provisions, covenants and conditions imposed upon Mortgagor under the Security Instruments and under any other agreement given by Mortgagor as additional security for the payment of the indebtedness secured hereby.

1.4 The Mortgagor will commit or permit no waste on the Mortgaged Property, commit or permit no violation of any law, ordinance or governmental regulations affecting the same or the use thereof, and will keep all Improvements in sound condition and in a first-class state of decoration and repair.

1.5 The Mortgagor will:

1.5.1 promptly commence with diligence to settle insurance claims and to repair, restore, rebuild, replace or alter as necessary any portion of the Mortgaged Property which may be damaged or destroyed by fire or other casualty, or taken by condemnation, as nearly as possible to the condition the same was in prior to such damage or destruction, provided Mortgagee makes any available insurance proceeds or condemnation awards available to Mortgagor for such purposes. Mortgagor will give the Mortgagee prompt written notice of damage to the Mortgaged Property; and

1.5.2 not remove or demolish the Improvements, and make no material change or alteration to the Improvements which would change their general character or size, without the prior written consent of the Mortgagee.

1.6 The Mortgagor will continuously operate the Mortgaged Property in compliance with all applicable laws, ordinances, rules, regulations and directions of government authorities having jurisdiction over the Premises, and also in compliance with requirements of all policies of insurance on the Mortgaged Property and of the national or local Boards of Fire Underwriters. The Mortgagor will also procure, pay for and maintain all permits, licenses and other authorizations needed for the operation of the Mortgaged Property.

1.7 Mortgagor shall permit Mortgagee, and its officers, agents and servants, to enter upon the Mortgaged Property at all reasonable times to view and inspect the same.

1.8 Mortgagor shall pay all indebtedness secured by any mortgage creating a senior and prior lien on the whole or any part of the Mortgaged Property and perform all covenants, terms and conditions contained in any such mortgage on the part of Mortgagor to be performed and observed, all within the periods provided for payment, performance and observance in any such mortgage, thereby preventing an event of default from occurring thereunder.

1.9 If Mortgagor fails to pay any installment of principal or interest or any other amount on any senior and prior mortgage on the Mortgaged Property when the same becomes due and payable, Mortgagee may pay the same, and Mortgagor on demand will repay the amount so paid with interest at the rate set forth in the Note, and the same shall be added to the mortgage indebtedness, constitute a further lien on the Mortgaged Property and be secured by this Mortgage.

**Section 2.** **<u>Assignment of Leases and Rents</u>**

Mortgagor, as provided above, as additional security for the obligations secured hereby, hereby assigns, sets over, and transfers to Mortgagee and grants a security interest in, the Leases and the rents.

**Section 3.** **<u>Insurance</u>**. Until the Note is paid in full, Mortgagor shall obtain and maintain in effect insurance coverage as to the Mortgaged Property as follows:

3.1 Fire and extended coverage insurance, including vandalism and malicious mischief, broadened to the so-called "ISO Special Form" (or its equivalent) coverage basis in an amount, after application of any deductibles acceptable to Mortgagee, of not less than one hundred percent (100%) of the full replacement value of the insured Mortgaged Property at the time of issuance of such policy or policies and at each renewal date thereof, exclusive of land, excavations, foundations and other items normally excluded from such policies. The amount of insurance shall be sufficient to prevent the application of any insurance policy co-insurance contribution on any loss.

3.2 Such additional insurance coverage and/or endorsements as may be requested by Bank, in its sole discretion, but not limited to: earthquake, including subsidence; collapse due to faulty construction and/or error in design or faulty workmanship; contingent liability (demolition) from operation of any building laws pertaining to non-conforming property; worker's compensation (meeting minimum statutory requirements); glass, boiler and machinery, including electrical apparatus; building ordinance

coverage; incurred cost of reconstruction due to the presence of hazardous material or oil or petroleum products; and debris clean up and removal.

3.3 Comprehensive general liability insurance covering the subject Mortgaged Property in an amount not less than $1,000,000 bodily injury and/or property damage liability per occurrence, as well as $ 1,000,000 general liability or combination of general liability and umbrella coverage.

3.4 Loss of rent insurance in an amount not less than the aggregate rental value of the Mortgaged Property for a period of not less than one (1) year. Such insurance shall be increased as rental income from the Mortgaged Property increases.

3.5 If the Mortgaged Property is located in an area designated by the U.S. Department of Housing and Urban Development as having special flood or mudslide hazards, Mortgagor shall furnish satisfactory policies of flood insurance covering the Mortgaged Property.

3.6 All such insurance shall be evidenced by valid and enforceable policies in form and substance, and issued by such insurers of recognized responsibility authorized to do business in the state where the Mortgaged Property is located, which meet financial standards reasonably required by the Mortgagee. The originals of all such policies shall be delivered to the Mortgagee upon its request, and thereafter all renewals or replacement policies shall be delivered to the Mortgagee upon its request, in each case accompanied by evidence satisfactory to the Mortgagee that all premiums currently payable with respect to such policies have been paid in full by Mortgagor.

3.7 All policies of insurance of the character described in subdivision (a) of Section 3.1 shall:

3.7.1 contain a standard non-contributory form of mortgage clause in favor of and in form acceptable to Mortgagee; and

3.7.3 provide that any loss shall be payable to Mortgagee not withstanding any act or negligence of Mortgagor which might otherwise result in a forfeiture of said insurance.

3.8 All policies of insurance described herein shall contain an endorsement requiring obligatory thirty (30) days advance written notice of policy cancellation, non-renewal or material change in coverage, scope or amount of any such policies to Mortgagee and the standard mortgagee clause shall read: "The Washington Trust Company, its successors and/or assigns as their interests may appear, 23 Broad Street, Westerly, Rhode Island 02891.

3.9 Mortgagor shall have the right of free choice in the selection of the agent or insurer through or by which the insurance required hereunder is to be placed; provided however, said insurer is authorized to write such insurance in the State of Rhode Island.

**Section 4. Taxes, etc.**

The Mortgagor will pay before they become delinquent all taxes, assessments, water and sewer charges and all other charges of whatever nature, which may be levied, assessed or otherwise become a lien upon or charge against the whole or any portion of the Mortgaged Property and any tax assessed against Mortgagee with respect to this Mortgage, whether under statutes now in force or that may hereinafter be enacted, and deliver receipts therefor to the Mortgagee.

**Section 5. Payment of Liens.**

Mortgagor shall pay, when the same shall become due and payable, all lawful claims and demands of mechanics, materialmen, laborers and others which, if unpaid, might result in or permit the creation of a lien on the Mortgaged Property or any part thereof.

**Section 6. Damage by Fire, etc.**

6.1 Upon the occurrence of any damage or destruction of all or any part of the Mortgaged Property, the obligations secured hereby shall, at the option of Mortgagee, become immediately due and payable, and all amounts due under any insurance policies relating to the Mortgaged Property shall be paid to the Mortgagee alone, to be applied first toward reimbursement of all costs and expenses of the Mortgagee in collecting such proceeds, and, at the option of the Mortgagee, either toward payment of the indebtedness secured hereby, whether or not due and payable, or to the repair, restoration, rebuilding or replacement of that part of the Mortgaged Property so damaged or destroyed under such terms as Mortgagee shall deem appropriate. The Mortgagee is authorized and is hereby appointed the true and lawful attorney irrevocable of Mortgagor, (a) to adjust and compromise any losses without the consent of the Mortgagor, (b) to collect, receive and receipt for any amounts received in settlement of losses, and (c) to endorse the Mortgagor's name upon any draft or check in payment thereof.

6.2 Nothing contained in this Article shall relieve the Mortgagor of its obligations in Section 1.5.1 hereof in the event that no or inadequate proceeds of insurance are available to defray the cost of such work. In addition, nothing contained herein shall relieve the Mortgagor of its duty to pay all installments of principal and interest and to make all other payments required by the Note and this Mortgage subsequent to the occurrence of any fire or other casualty.

**Section 7. Condemnation.**

7.1 Forthwith upon receipt by the Mortgagor of notice of the institution of any proceeding or negotiations for the taking of the Mortgaged Property, or any part thereof, in condemnation or by the exercise of the power of eminent domain, the Mortgagor shall give notice thereof to the Mortgagee. The Mortgagee may appear in any such proceedings and participate in any such negotiations and may be represented by counsel. The Mortgagor, notwithstanding that the Mortgagee may not be a party to any such proceeding, will promptly give to the Mortgagee copies of all notices, pleadings, judgments, determinations and other papers received by the Mortgagor in connection therewith. The Mortgagor will not enter into any agreement for the taking of the Mortgaged Property, or any part thereof, with anyone authorized to acquire the same in condemnation or by eminent domain unless the Mortgagee shall first have consented thereto.

7.2 In the event of a taking of all or any portion of the Mortgaged Property in condemnation or by eminent domain, the whole of the principal sum and interest evidenced and secured by the Note and this Mortgage, together with all other amounts, if any, then secured hereby, shall, at the option of the Mortgagee, forthwith become due and payable, and all awards paid or payable on account of such taking shall, in any event, be paid to the Mortgagee and shall be applied to the payment of such amounts.

**Section 8. Default Provisions.**

The occurrence of any of the following events shall constitute an Event of Default hereunder:

8.1 Failure of the Mortgagor to pay when due, after the expiration of any applicable grace period, any amount payable under the Note, this Mortgage or the Security Instruments or any supplement, modification or extension thereof;

8.2 Failure of the Mortgagor to perform any of its other obligations, covenants, or agreements contained in this Mortgage, the Note, the Security Instruments or in any other instrument executed in connection therewith;

8.3 Any direct or indirect mortgage, pledge, hypothecation or encumbrance or any sale, lease, assignment or other transfer of the Mortgaged Property is made by the Mortgagor (other than Leases thereof made in the ordinary course of business by the Mortgagor) without the prior written consent of the Mortgagee;

8.4 Termination of any Lease, sale, assignment, sublease or other transfer of any interest of any lessee in any Lease, or of any rights or obligations of any lessee thereunder, without the prior written consent of the Mortgagee;

8.5 Any representation or warranty made by the Mortgagor is not true in any material respect as of the date of the issuance or making thereof as contained in the Note, this Mortgage, the Security Instruments, or in any other document executed in connection therewith;

8.6 The occurrence of any other Event of Default under the Note, the Security Instruments or any other instrument now or hereafter executed in connection with or securing the Note or evidencing the indebtedness secured hereby;

8.7 The occurrence of any "event of default" under any document, agreement or instrument now or hereafter evidencing any obligation or other indebtedness secured in whole or in part by any or all of the Mortgaged Property, or the nonpayment, nonperformance or nonobservance of any of the covenants, agreements or conditions of any such documents, agreements or instruments,

8.8 Any survey, report or examination discloses that the Improvements or any portion thereof encroach upon or project over a street or upon or over adjoining property, and such condition shall have continued for more than thirty (30) days after notice thereof from Mortgagee to Mortgagor; or

8.9 If any notice of responsibility, notice of violation, notice letter or other similar notice or claim is issued or filed by the Environmental Protection Agency or any governmental agency of the State of Rhode Island against Mortgagor or the Mortgaged Property under any federal, state or local law governing the existence, release, generation, storage or disposal of any hazardous materials, and the regulations adopted pursuant thereto.

**Section 9.** <u>**Remedies upon Default.**</u>

9.1 Upon the occurrence of any Event of Default hereunder, Mortgagee shall have the following rights, which rights shall be cumulative and not exclusive and in addition to any other rights granted to Mortgagee under this Mortgage:

9.1.1 Mortgagee shall have the right forthwith, at its election, to exercise any and all rights and remedies available to it at law or in equity;

9.1.2 Mortgagee, at its option, without obligation to do so, without notice to, or demand on, the Mortgagor and without releasing Mortgagor from any liability under the Note, the Security Instruments or this Mortgage, may make any payment or perform any act which the Mortgagor is obligated to pay or do under the terms of this Mortgage. In making any such payment or performing any such act, the Mortgagee may incur any liability and expend whatever amounts it may deem necessary. All such amounts, without notice or demand, shall be immediately due and payable to the Mortgagee by the Mortgagor with interest thereon, to the extent permitted by law, at the lower of the maximum rate permitted by law or five percent (5%) above the interest rate set forth in the Note, and shall be secured hereby;

9.1.3 As a matter of right, have a receiver immediately appointed for the Mortgaged Property and the earnings, revenues, rents, issues, profits and other income thereof and therefrom, with all such powers as the court making such appointment shall confer;

9.1.4 Mortgagee shall have the right to cause one or more appraisals of the Mortgaged Property to be undertaken, the cost of all such appraisals to be borne by the Mortgagor; and

9.1.5 Mortgagee shall have the right forthwith, at its election, and without further notice or demand (except as otherwise specifically provided in the Note or Security Instruments) and without the commencement of any ,action to foreclose this Mortgage, to enter immediately upon and take possession of the Mortgaged Property without further consent or assignment by Mortgagor, with the right to lease the Mortgaged Property, or any part thereof, and to collect and receive all of the rents, issues and profits, and all other amounts past due or to become due to Mortgagor by reason of its ownership of the Mortgaged Property and to apply the same, after the payment of all necessary charges and expenses in connection with the operation of the Mortgaged Property (including any managing agent's commission, at the option of Mortgagee), on account of interest and principal amortization under the Note, taxes, water and sewer charges, assessments and insurance premiums with respect to the Mortgaged Property, and any advance made by Mortgagee for improvements, alterations or repairs to the Mortgaged Property or on account of any other indebtedness hereby secured. And Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact to institute summary proceedings against any lessee, tenant or other occupant of any portion of the Mortgaged Property who shall fail to comply with the provisions of the Lease or with any covenant, agreement or condition applicable to the possession or occupancy of the Mortgaged Property by such lessee, tenant or other occupant. If Mortgagor or any other persons claiming by, through or under it, are occupying all or any part of the Mortgaged Property, it is hereby agreed that Mortgagor and such other persons shall either immediately surrender possession of the Mortgaged Property to Mortgagee and vacate the premises so occupied or pay a reasonable rental for the use thereof, monthly in advance, to Mortgagee.

9.2 This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all covenants and agreements of the Mortgagor contained herein, and in the Note and the Security Instruments, shall be kept and fully performed, for any breach of which or upon the occurrence of an Event of Default, the Mortgagee shall have the STATUTORY POWER OF SALE. Mortgagor will, upon Mortgagee's request, execute such deed or deeds confirmatory of such sale or sales as Mortgagee may deem necessary or advisable. Any sale of the Mortgaged Property at public auction pursuant to the statutory power of sale contained herein may be held upon the Mortgaged Property, or at such other place, if any, as may be designated by Mortgagee.

**Section 10.** **<u>Security Agreement</u>.**

References in this <u>Section 10</u> to the "UCC" are to the Uniform commercial code of the State of Rhode Island. Terms defined in the UCC and not otherwise defined in this <u>Section 10</u> have the same meanings as defined in the UCC. If a term is defined in Article 9 of the UCC and also in another Article of the UCC, the term defined in Article 9 shall control. It is the intent of the parties hereto that this instrument shall constitute a Security Agreement within the meaning of the UCC with respect to all Personal Property, fixtures and other goods of Mortgagor now or hereafter located upon or affixed to the Mortgaged Property, and all replacements thereof, substitutions therefor, additions thereto and proceeds (including insurance and condemnation proceeds) thereof (hereinafter referred to collectively as the "Collateral"), and that a security interest shall attach thereto for the benefit of the Mortgagee to secure the indebtedness evidenced by the Note and secured by this Mortgage, and all other sums and charges which may become due hereunder or thereunder. Mortgagor warrants and covenants that:

(a) Except for the security interest granted hereby, Mortgagor is, or upon acquiring rights in any of the Collateral will be, the owner of the Collateral free from any other lien, security interest or encumbrance; and Mortgagor will defend the security interest of the Mortgagee in the Collateral against claims and demands of all persons at any time claiming the same or any interest therein.

(b) No financing statement covering any Collateral is on file in filing office of any State.

(c) The Mortgagor irrevocably authorizes the Mortgagee at any time and from time to time to file in any filing office of any State any initial financing statements and amendments to financing statements indicating the Collateral in form and substance satisfactory to Secured Party. The Mortgagor

shall, upon demand by the Mortgagee, reimburse the Mortgagee for the Mortgagee's costs and expenses of, and any filing or other fees or taxes incurred in, preparing and filing any financing statements.

(d) In the Event of Default under this Mortgage and to the extent permitted by law, the Mortgagee shall have the option of proceeding as to both real and personal property in accordance with its rights and remedies in respect of the real property.

(e) Mortgagee may exercise any and all other rights of a secured party under the UCC.

(f) The Mortgagor agrees that, without the prior written consent of the Mortgagee, the Mortgagor will not remove or permit any of the Collateral to be removed from the Mortgaged Property unless the same is immediately replaced with unencumbered fixtures or articles of personal property, as the case may be, of a quality and value equal or superior to those which they replace. All replacements, renewals, accessions and additions shall become and be immediately subject to the security interest of this Mortgage and this Agreement and be covered thereby.

(g) The Mortgagor shall, from time to time, on request of the Mortgagee, deliver to the Mortgagee an inventory of the Collateral in reasonable detail, including an itemization of all items leased to Mortgagor or subject to conditional bill of sale, security agreement or other title retention agreement.

**Section 11. Miscellaneous Provisions.**

11.1 Without affecting the liability of Mortgagor, or any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for the performance of any obligations set forth in this Mortgage, and without affecting the lien or other rights of the Mortgagee with respect to any property or other security not expressly released in writing, the Mortgagee, at any time and from time to time, either before or after maturity of the Note, and without notice or consent, may:

11.1.1 release any person liable for payment of said debt, or for the performance of any obligation;

11.1.2 make any agreement extending the time, or otherwise altering the terms of payment of said debt, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien securing payment of the Note;

11.1.3 release or otherwise deal with any property, real or personal, securing said debt, including all or any part of the Mortgaged Property.

11.2 All notices, demands, requests, consents or other communications hereunder or in connection herewith ("Notices") shall be in writing and shall be sent by registered or certified mail, return receipt requested, postage prepaid, addressed to the party to receive such Notice, at its address first set forth above. Either party may, by Notice, change its address for all subsequent Notices. Notices shall be deemed given when mailed. All Notices by or on behalf of the Mortgagee herein named shall be deemed sufficient if signed by any one of its directors, officers or counsel and if otherwise given or made in compliance with this <u>Section 11.2</u>.

11.3 If at any time any governmental body shall impose a stamp, documentary or other similar tax on the Note, this Mortgage, the debt secured hereby or the income generated therefrom (excluding taxes imposed upon the income of the Mortgagee, generally), or any modification, amendment, extension or consolidation of either thereof, the Mortgagor will pay the same within ten (10) days after demand by the Mortgagee.

11.4 This instrument shall inure to and bind the successors and assigns of the parties hereto, and shall be so construed that whenever applicable with reference to any of the parties hereto, the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, the use of the masculine gender shall include the feminine gender, and shall likewise be so construed as applicable to and including a corporation or corporations or any other entity that may be a party or parties hereto. This Mortgage may not be waived, changed or discharged orally, but only by an agreement in writing signed by the party against whom any waiver, change or discharge is sought.

11.5 It is understood and agreed that the validity, construction and interpretation of this Mortgage will be in accordance with the laws of the State of Rhode Island.

11.6 In case any one or more of the provisions contained in the Note or in this Mortgage shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof, but each shall be construed as if such Invalid, illegal or unenforceable provision had never been included.

IN WITNESS WHEREOF, the undersigned has executed this instrument as of the date first written above.

ATLANTIS MANAGEMENT, LLC

By: [signature]
Tarek Wehbe, Member

STATE OF RHODE ISLAND
COUNTY OF Providence

In Providence, on the 17 day of August, 2005, before me personally appeared Tarek Wehbe, a member of Atlantis Management, llc, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed, his free act and deed in his capacity as aforesaid and the free act and deed of said Atlantis Management, llc.

[signature]
Notary Public
My Commission Expires: 12/17/08

**EXHIBIT "A"**

Those six (6) certain lots or parcel of land with all buildings and improvements thereon situated on the southerly side of Mineral Spring Avenue and the northerly side of Swanee Street in the Town of North Providence, County of Providence, State of Rhode Island laid out and designated as Lots Nos. 153 (one hundrd fifty-three), 154 (one hundred fifty-four), 155 (one hundred fifty-five), 164 (one hundred sixty-four), 165 (one hundred sixty-five), 166 (one hundred sixty-six) on that plat entitled "Wilbur Highlands North Providence, R.I. Owned by J. W. Wilbur July 1st, 1908 Scale 60 FT = 1 IN A. L. Eliot, C.E." which plat is recorded in the Office of the Town Clerk of said Town of North Providence on Plat Card 75.

Subject to restriction that no shanties or huts shall be built on said lots.

PROPERTY ADDRESS LISTED AS: 1630 MINERAL SPRING AVENUE
NORTH PROVIDENCE, RI
PLAT 24 ASSESSOR'S LOTS 440 & 450

DOC NO: 00007641
BOOK 2146 PAGE 11

**EXHIBIT B**

**PERMITTED TITLE EXCEPTIONS**

1. Taxes assessed, not yet due and payable.

2. Sewer and water use charges, not yet due and payable.

3. Restrictions that no shanties or huts shall be built on said lots.

RECEIVED FOR RECORD
NORTH PROVIDENCE, RI

Aug 18,2005 10:57:41A

MaryAnn DeAngelus

Town Clerk

11