# Exhibit A

PROMISSORY NOTE

$800,000.00 Pawtucket, Rhode Island

November 15, 2005

FOR VALUE RECEIVED, Elegant Homes, LLC, a Rhode Island limited liability company, with a mailing address at 5 Princess Pine Road, Lincoln, Rhode Island 02865, (hereinafter referred to as "Maker"), promise to pay to the order of CREDIT UNION CENTRAL FALLS, a Rhode Island credit union, with its principal place of business at 1005 Douglas Pike, Smithfield, Rhode Island, 02896, (hereinafter referred to as "Payee"), the principal sum of EIGHT HUNDRED THOUSAND AND 00/100 ($800,000.00) Dollars, together with interest, in arrears, from the date hereof on the unpaid principal balance from time to time outstanding, whether before or after the maturity of or default under this note, at the rate of six and one half percent (6.5%) per annum.

All interest payable hereunder shall be computed on the basis of the actual number of days elapsed using a three hundred sixty (360) day year.

Principal and interest hereunder shall be payable as follows: consecutive monthly installments (the "Monthly Installments") of interest only commencing on the 15th day of December, 2005 and continuing on the 15th day of each month thereafter until the 15th day of May, 2007, when a balloon payment of principal and all unpaid interest shall be due and payable.

All sums payable hereunder are payable in lawful money of the United States of America and in immediately available funds at the above stated office of Payee or such other place or places as Payee, its successors or assigns (the "Holder") may designate in writing.

This note may be prepaid at any time, in whole or in part, without penalty or premium.

All sums paid under this note shall be applied first to any interest, fees, expenses and other charges then due and unpaid, in such order as the Holder shall determine, with the remaining balance, if any, to be applied to unpaid principal.

Whenever a day on which payment of interest and/or principal required to be made hereunder falls on a Saturday, Sunday or public holiday, such payment shall be due on the next following normal business day, and where time is extended for the payment of principal by virtue of the due date thereof falling on a Saturday, Sunday or Public holiday, such extended time shall be included in the computation of interest.

This note is secured by a Mortgage and Security Agreement, Collateral Assignment of Leases and Rents and Financing Statement from Maker of even date herewith with respect to certain real and personal property located at 15 Dennell Drive, Lincoln, Rhode Island 02865 and more particularly described therein, which documents are hereinafter collectively referred to as the "Security Instruments".

Payee and any successor Holder may assign, transfer or negotiate this note and any security for the performance of Maker's obligations hereunder, and in such event all the provisions of this note and the Security Instruments shall inure to the benefit of and may be exercised by or on behalf of the successor Holder, and all payments of principal and of interest due and to become due under this note shall not thereafter be subject to any defense, counterclaim or set-off which Maker may have against any prior Holder.

The occurrence of any one or more of the following events will constitute an Event of Default hereunder:

1. Nonpayment of any installment of principal and/or interest due under this note when it shall become due and payable (no prior demand therefor being necessary).

2. Nonpayment of any other sum payable under this note, any of the Security Instruments or any other documents, instruments or agreements, including the Loan Agreement, ("Other Documents") now or hereafter securing this note or executed by Maker or any other person, corporation or other entity now or hereafter liable, absolutely or contingently, for the whole or any part of the indebtedness evidenced by this note, including, without limitation, any guarantor(s) hereof (an "Other Liable Party") in connection herewith.

3. Nonperformance or nonobservance of any of the other covenants, agreements, or conditions of any of the Security

Instruments or any of the Other Documents.

4. The occurrence of any "Event of Default" under any Security Instrument or any of the Other Documents, or the occurrence of any event or condition which would entitle Holder to exercise any of its remedies under the Security Instrument or any of the Other Documents.

5. The cancellation, lapse or termination of any insurance coverage required to be maintained by Maker under any Security Instrument.

6. The property mortgaged, pledged or otherwise given to secure this note or any portion thereof or any interest therein is conveyed, voluntarily encumbered or otherwise transferred in any way without the prior written consent of Holder.

7. Breach of, or the proving false or misleading, in any material respect, of any representation or warranty now or hereafter made to any Holder by, on behalf of, or for the benefit of Maker, contained in the Security Instruments or Other Documents, this note or any loan application, statement, financial statement, certificate, agreement or instrument furnished, signed or executed in connection herewith by, on behalf of, or for the benefit of Maker.

8. Maker or any Other Liable Party shall fail to pay any indebtedness (other than as evidenced by this note) owing by the Maker or any Other Liable Party, any interest, commitment fee or premium thereon, when due or, if permitted by the terms of the relevant document, within any applicable grace period, whether such indebtedness shall become due by scheduled maturity, by required prepayment, by acceleration, by demand or otherwise; or Maker or any Other Liable Party shall fail to perform any term, covenant or agreement on its part to be performed under any agreement or instrument (other than this note or the Security Instruments) evidencing or securing or relating to any indebtedness owing by Maker or any Other Liable Party, when required to be performed, or, if permitted by the terms of the relevant document, within any applicable grace period, if the effect of such failure is to accelerate, or to permit the holder or holders of such indebtedness to accelerate the maturity of such indebtedness.

9. (a)(i) The insolvency or inability of Maker or any Other

Liable Party to pay his, her, their or its debts as they mature; (ii) the appointment of a receiver, trustee, custodian or any other fiduciary, for, or for any of the property of, Maker or any Other Liable Party; (iii) the making of an assignment for the benefit of creditors, or the making of or entering into a trust mortgage or deed or other instrument of similar import for the benefit of creditors, by Maker or any Other Liable Party; or (iv) the convening of a meeting of the creditors, or the selection of a committee representing the creditors of Maker or any other Liable Party; or

(b) The filing of a petition, complaint, motion or other pleading seeking any relief under any receivership, insolvency, or debtor relief law, or seeking any readjustment indebtedness, reorganization, composition, extension or any similar type of relief, or the filing of a petition, complaint or motion under any chapter of the Federal Bankruptcy Code, as the same now exists or may hereafter be amended, by or against Maker or any Other Liable Party; or

(c) The entry of any judgment against, or the attachment or garnishment of any of the property, goods or credits of, Maker or any Other Liable Party which remains unpaid, unstayed, undismissed or unbonded for a period of thirty (30) days; or if any foreclosure is instituted (by judicial proceedings, by publication or notice pursuant to a power of sale or otherwise) against Maker under any mortgage, deed of trust or security agreement granted by Maker and is not dismissed or terminated for a period of fifteen (15) days.

10. Any material adverse change in the financial condition of Maker or any Other Liable Party which leads Holder to believe that performance of any of the covenants, agreements or conditions of this note, the Security Instrument or any Other Documents now or hereafter securing this note, is or may be substantially impaired.

11. The dissolution, liquidation or termination of existence of Maker or any Other Liable Party or a sale of assets of Maker or any Other Liable Party out of the ordinary course of business.

12. The death, incompetence or incapacity to act of any natural person who is a Maker or Other Liable Party.

13. If Maker is a limited liability company, the transfer, assignment or pledge of any interest in Maker by any of the present members thereof, or dilution of the percentage interest in Maker held by any of the present members thereof without the prior written consent of Holder.

Upon the occurrence of any Event of Default, this note, at the option of the Holder, shall become immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Maker and by every Other Liable Party. The Holder's failure to exercise such option shall not constitute a waiver of the right to exercise it at any other time. Irrespective of the exercise or nonexercise of the foregoing option, in the event that any payment herein provided for shall become overdue for more than fifteen (15) days a "late charge", of five percent (5%) of the overdue payment shall become immediately due and payable to the Holder as liquidated damages for failure to make prompt payment, and the same shall be secured by the Security Instrument.

Notwithstanding anything contained in this Note to the contrary, upon the declaration of an occurrence of an Event of Default, then, from the date of such declaration of the occurrence of such Event of Default until the earlier of payment of this Note in full or all Events of Defaults are cured, the interest rate hereunder shall immediately increase (without any notice thereof being required) to a default rate equal to five percent (5.00%) greater than the interest rate in effect at the time of such Event of Default.

Maker agrees to notify Holder promptly in writing, and in any event within ten (10) days, of the occurrence of any event or condition which constitutes an Event of Default hereunder, or which with the giving notice or passage of time, or both, would constitute such an Event of Default. Failure to so notify Holder shall be an Event of Default hereunder.

No renewal or extension granted, or any indulgence shown to, or any release of, or any dealings between the Holder and any other person, corporation, or entity now or hereafter interested in this note or in the property securing this note, whether as owner, encumbrancer, grantor, or otherwise, shall discharge, extend or in any way affect the obligations of Maker or any Other Liable Party hereunder.

Maker shall remain primarily liable on this note and the Security Instrument given to secure the same until full payment, unaffected by any alienation of all or any part of the property securing this note, by any agreement or transaction between any Holder and any alienee as to payment of principal, interest or other monies, by any forbearance or extension of time, guaranty or assumption by others, or any other matter, as to all of which notice is hereby waived by Maker. Nothing in this paragraph shall be deemed to be a consent of Payee to any alienation.

Maker will pay the legal and other fees and expenses of the Holder reasonably incurred in connection with or incidental to (i) negotiation, closing and administration of the loan evidenced by this note, and (ii) the enforcement of any of the obligations of Maker or rights of the Holder under this note, the Security Instrument or any other agreement, document or instrument now or hereafter executed in connection herewith, by litigation or otherwise; and all such fees and expenses shall be indebtedness under this note and shall be secured by the Security Instruments.

Maker warrants and represents that all financial statements previously furnished by Maker to Payee fully and accurately reflect the financial condition of Maker in all material respects for the dates and periods indicated, and there has been no material adverse change in the financial condition of Maker since the date of such statements.

Maker agrees to provide Payee with signed copies of Maker's tax return(s) within one hundred fifty (150) days of the end of each fiscal year and the annual federal income tax statements of Superb Builders, Inc. and the Guarantors.

All provisions of this note and the Security Instruments are expressly subject to the condition that in no event, whether by reason of acceleration of maturity of the indebtedness evidenced hereby or otherwise, shall the amount paid or agreed to be paid to Payee hereunder and deemed interest under applicable law exceed the maximum rate of interest on the unpaid principal balance of this note allowed by applicable law (the "Maximum Allowable Rate"), which shall mean the law in effect on the date of this note, except that if there is a change in such law which results in a higher Maximum Allowable Rate being applicable to this note, then this note shall be governed by such amended law from and after its effective date. In the event that fulfillment of any provision of this note or the Security Instruments results

in the interest rate hereunder being in excess of the Maximum Allowable Rate, the obligation to be fulfilled shall automatically be reduced to eliminate such excess. If, notwithstanding the foregoing, Payee or any successor Holder receives an amount which under applicable law would cause the interest rate hereunder to exceed the Maximum Allowable Rate, the portion thereof which would be excessive shall automatically be applied to and deemed a prepayment of the unpaid principal balance of this note and not a payment of interest.

If more than one party executes this note as a maker, all their obligations hereunder are the joint and several obligations of the undersigned, and references to Maker herein shall be deemed to refer to both of them, each of them and either of them.

This note may not be modified or terminated orally.

This note has been executed and delivered in Rhode Island and for all purposes shall be enforced and construed in accordance with the substantive law of the State of Rhode Island, without resort to Rhode Island's conflict of laws rules.

MAKER WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS NOTE AND ANY INSTRUMENT SECURING OR RELATING TO THIS NOTE.

IN WITNESS WHEREOF, Maker has executed this note as of the date first above written.

Witness as to both:

[signature]
Charles H. White

Elegant Homes, LLC

by: [signature], Member
Tarek Wehbe, Member

by: [signature], member
Harry Zervas, Member

15n09not.ele

0003031

**OMNIBUS AMENDMENT**

This Agreement is made this 16th day of May, 2007, between Navigant Credit Union, f/k/a Credit Union Central Falls (the "Lender"), Elegant Homes, LLC, a Rhode Island limited liability company (the "Borrower"), and Tarek Wehbe, Harry Zervas, Krzysztof Puzanowski and Superb Builders, Inc. (the "Guarantors").

Whereas, Borrower entered into a Mortgage Loan from Credit Union Central Falls pursuant to a Loan Agreement dated November 15, 2005 (the "Loan Agreement");

Whereas, in accordance with the terms of the Loan Agreement, Borrower executed a Note in the amount of $800,000.00 dated November 15, 2005 (the "Note") which provided for a Maturity Date of May 15, 2007 (the "Maturity Date");

Whereas, to secure Borrower's obligations under the Loan Agreement and Note, Borrower executed and delivered to Lender a Mortgage, Security Agreement, Assignment of Leases and Rents and Financing Statement, dated November 15, 2005 (the "Mortgage") covering property located at 15 Dennell Drive, Lincoln, Rhode Island and more particularly described on Schedule A attached thereto (the "Property"), which Mortgage was recorded in the Land Evidence Records of the Town of Lincoln, State of Rhode Island in Book 1302 at page 96 (the "Mortgage");

Whereas, as further security of Borrower's obligation under the Loan Agreement and Note, Guarantors executed and delivered to Lender certain guaranties dated November 15, 2005 (the "Guaranties"); and

Whereas, Borrower has asked Lender, and Lender has agreed, to extend the Maturity Date,

NOW THEREFORE, in consideration of the terms and conditions herein contained and for good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree and amend the Loan Documents, hereinafter defined, to the extent they are inconsistent herewith as follows: (The Note, Mortgage, Loan Agreement, Guaranties and other documents related thereto are collectively referred to herein as the "Loan Documents"):

1. The term of the Note and the Maturity Date are hereby extended to June 15, 2007, at which date all unpaid principal, interest, and any other fees, costs and charges due under the Note, Mortgage and Loan Agreement shall be due and payable;

2. Interest shall accrue on unpaid principal at the rate of 8% per annum from May 15, 2007 until the Note and all obligations due under the Loan Documents are paid in full, provided however that in the event of default by Borrower, the rate of interest shall be increased to the default rate as provided in the Note;

3. The Guarantors hereby confirm and ratify their obligations under their respective Guaranties and consent to the terms and conditions of this Amendment, and hereby affirm and restate all of the representations, warranties, covenants and agreements made and set forth in the Guaranties to which they are a party.

4. In all other respects, all of the terms and conditions of the Guaranties, Loan Agreement, the Note, the Mortgage and all other documents executed and/or

delivered in connection therewith, shall remain in full force and effect and are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned has executed this Amendment to Loan Agreement on this 16 day of May, 2007

Witness to all:

Maria Caetano

LENDER:

Navigant Credit Union

By: Maria Caetano

BORROWER:

Elegant Homes, LLC

By:
Tarek Wehbe, Member

By:
Harry Zervas, Member

GUARANTORS:

Superb Builders, Inc.

By:
Harry Zervas, President

Tarek Wehbe

Harry Zervas

Krzysztof Puzanowski

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Smithfield on the 29th day of May, 2007, before me personally appeared the above named Jeffrey P. Cascione, Vice President of Navigant Credit Union, to me known and known by me to be the party executing the foregoing instrument on behalf of said Navigant Credit Union, and he acknowledged said instrument, and the execution thereof, to be his free act and deed and the free act and deed of Navigant Credit Union.

Charlene M. Barrow
Notary Public:
My Commission Expires: 9/6/09

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Smithfield on the ~~29th~~ 16th and days of May, 2007, before me personally appeared the above named Tarek Wehbe, and Harry Zervas, Members of Elegant Homes, LLC, to me known and known by me to be the parties executing the foregoing instrument on behalf of said Elegant Homes, LLC, and they acknowledged said instrument, and the execution thereof, to be their free act and deed and the free act and deed of Elegant Homes, LLC.

Notary Public: Jeffrey P. Cascione
My Commission Expires: 2/17/10

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Smithfield on the 29th day of May, 2007, before me personally appeared the above named Harry Zervas, President of Superb Builders, Inc., to me known and known by me to be the party executing the foregoing instrument on behalf of said Superb Builders, Inc., and he acknowledged said instrument, and the execution thereof, to be his free act and deed and the free act and deed of Superb Builders, Inc.

Notary Public: Jeffrey P. Cascione
My Commission Expires: 2/17/10

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Smithfield on the 29th day of May, 2007, before me personally appeared the above named Harry Zervas, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, and the execution thereof, to be his free act and deed.

Notary Public: Jeffry P. Cascione
My Commission Expires: 2/17/10

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Smithfield on the 16th day of May, 2007, before me personally appeared the above named Tarek Wehbe, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, and the execution thereof, to be his free act and deed.

Notary Public: Jeffry P Cascione
My Commission Expires: 2/17/10

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Smithfield on the 16th day of May, 2007, before me personally appeared the above named Krzysztof Puzanowski, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, and the execution thereof, to be his free act and deed.

Notary Public: Jeffry P. Cascione
My Commission Expires: 2/17/10

LINCOLN, RI
KAREN D. ALLEN
TOWN CLERK

2007 JUN 11 P 3:44

**OMNIBUS AMENDMENT**

This Agreement is made this 22nd day of February, 2008, between Navigant Credit Union, f/k/a Credit Union Central Falls (the "Lender"), Elegant Homes, LLC, a Rhode Island limited liability company (the "Borrower"), and Tarek Wehbe, Harry Zervas, Krzysztof Puzanowski and Superb Builders, Inc. (the "Guarantors").

Whereas, Borrower entered into a Mortgage Loan from Credit Union Central Falls pursuant to a Loan Agreement dated November 15, 2005 (the "Loan Agreement");

Whereas, in accordance with the terms of the Loan Agreement, Borrower executed a Note in the amount of $800,000.00 dated November 15, 2005 (the "Note") which provided for a Maturity Date of May 15, 2007 (the "Maturity Date");

Whereas, to secure Borrower's obligations under the Loan Agreement and Note, Borrower executed and delivered to Lender a Mortgage, Security Agreement, Assignment of Leases and Rents and Financing Statement, dated November 15, 2005 (the "Mortgage") covering property located at 15 Dennell Drive, Lincoln, Rhode Island and more particularly described on Schedule A attached thereto (the "Property"), which Mortgage was recorded in the Land Evidence Records of the Town of Lincoln, State of Rhode Island in Book 1302 at page 96 (the "Mortgage");

Whereas, as further security of Borrower's obligation under the Loan Agreement and Note, Guarantors executed and delivered to Lender certain guaranties dated November 15, 2005 (the "Guaranties"); and

Whereas, Borrower has asked Lender, and Lender has agreed, to extend the Maturity Date,

NOW THEREFORE, in consideration of the terms and conditions herein contained and for good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree and amend the Loan Documents, hereinafter defined, to the extent they are inconsistent herewith as follows: (The Note, Mortgage, Loan Agreement, Guaranties and other documents related thereto are collectively referred to herein as the "Loan Documents"):

1. The terms of the Note and the Maturity Date are hereby extended to June 15, 2008, at which date all unpaid principal, interest, and any other fees, costs and charges due under the Note, Mortgage and Loan Agreement shall be due and payable;

2. Borrower agrees that as a condition precedent to the effectiveness of this Modification Agreement, it shall pay the Lender a non-refundable extension fee of $8,000.00. Receipt of $4,000.00 is hereby acknowledged upon the signing of this amendment. The remaining $4,000.00 is to be paid upon the sooner of payment in full or the loan's maturity.

3. The Guarantors hereby confirm and ratify their obligations under their respective Guaranties and consent to the terms and conditions of this Amendment, and hereby affirm and restate all of the representations, warranties, covenants and agreements made and set forth in the Guaranties to which they are a party.

4. In all other respects, all of the terms and conditions of the Guaranties, Loan Agreement, the Note, the Mortgage and all other documents executed and/or delivered in connection therewith, shall remain in full force and effect and are hereby ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned has executed this Amendment to Loan Agreement on this 22nd day of February, 2008.

Witness:

LENDER:

Navigant Credit Union

By: ____________________
Jeffrey P. Cascione

Witness:

BORROWER:

Elegant Homes, LLC

By: ____________________, Member
Tarek Wehbe, Member

By: ____________________ member
Harry Zervas, Member

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Smithfield on the 22nd day of February, 2008, before me personally appeared the above named Jeffrey P. Cascione, Vice President of Navigant Credit Union, to me known and known by me to be the party executing the foregoing instrument on behalf of said Navigant Credit Union, and he acknowledged said instrument, and the execution thereof, to be his free act and deed and the free act and deed of Navigant Credit Union.

Charlene M. Bauron
Notary Public:
My Commission Expires: 9/6/09

STATE OF R.I.
COUNTY OF PROV.

In LINCOLN on the 20TH day of February, 2008, before me personally appeared the above named Tarek Wehbe, Member of Elegant Homes, LLC, to me known and known by me to be the parties executing the foregoing instrument on behalf of said Elegant Homes, LLC, and they acknowledged said instrument, and the execution thereof, to be their free act and deed and the free act and deed of Elegant Homes, LLC.

Notary Public:
My Commission Expires: 6-16-09
THOMAS W. MADONNA

STATE OF R.I.
COUNTY OF PROV.

In LINCOLN on the 20TH day of February, 2008, before me personally appeared the above named Harry Zervas, Member of Elegant Homes, LLC to me known and known by me to be the party executing the foregoing instrument on behalf of said Elegant Homes, LLC, and he acknowledged said instrument, and the execution thereof, to be his free act and deed and the free act and deed of Elegant Homes, LLC.

Notary Public:
My Commission Expires: 6-16-09
THOMAS W. MADONNA

# AMENDMENT TO PROMISSORY NOTE

Made this 23rd day of June, 2008, between **ELEGANT HOMES LLC** ("Borrower"), a Rhode Island limited liability company, and **NAVIGANT CREDIT UNION** ("Lender").

WHEREAS, on November 15, 2005, Borrower and Lender entered into a certain Loan Agreement, and pursuant to the Loan Agreement, Borrower, Tarek Wehbe, Harry Zervas, Krzysztof Pusanowski, and Superb Builders, Inc. executed, acknowledged and delivered to Lender various loan and security documents, including Borrower's promissory note in the original principal amount of $800,000.00 (as previously amended, the "Note"), and

WHEREAS, Borrower has requested that Lender extend the maturity date of the Note, and Lender is willing to do so only upon the terms and conditions of this Amendment,

NOW, THEREFORE, the parties agree as follows:

1. Definitions and Rules of Construction.

(A) Definitions. Except as specifically set forth otherwise herein, all rules of construction set forth in the Loan Agreement apply to this Amendment, all capitalized terms not otherwise defined herein shall have the meanings given such terms in the Loan Agreement, and:

"Guarantors" includes Tarek Wehbe, Harry Zervas, Krzysztof Pusanowski, and Superb Builders, Inc., and such other Persons who now or hereafter guaranty the payment or collection of, or become accommodation parties with respect to, any portion of the Obligations. "Signing Guarantors" means Harry Zervas and Superb Builders, Inc. "Non-Signing Guarantors" means Tarek Wehbe and Krzysztof Pusanowski.

"Loan Documents" include this Agreement, the Note, Borrower's Mortgage, Security Agreement, Assignment of Leases and Rents and Financing Statement (executed as of November15, 2005), the Guarantors' respective guaranties (each executed as of November 15, 2005), and any and all other writings which now or hereafter evidence or secure any portion of the Obligations, and any amendments, modifications or substitutions of or for the foregoing.

"Obligations" is used in its most comprehensive sense and includes all loans and any and all other advances, indebtedness, obligations, covenants, undertakings and liabilities of Borrower to Lender, individually or collectively, whether direct or indirect, joint or several, absolute or contingent, liquidated or disputed, due or to become due, now existing or hereafter arising hereunder or under any other agreement or instrument, however evidenced, and whether or not same are from time to time reduced or extinguished and thereafter increased or incurred, and whether or not presently contemplated by the parties on the date hereof; and all interest, taxes, fees, charges, costs, and expenses (including reasonable attorneys' fees) chargeable to Borrower or incurred by Lender under this or any other agreement or instrument.

"Obligor" means Borrower, the Guarantors, and any Person who is or becomes liable on all or any part of the Obligations by contract, by operation of law, or otherwise.

"Person" includes any individual, partnership, joint venture, firm, association, corporation, limited liability company or any other type of association or entity.

(B) Rules of Construction. The terms "includes" and "including" are not limiting. Except as modified in this Amendment, the provisions of Section VI of the Loan Agreement shall apply to this Amendment as if fully set forth herein.

(C) Effect and Construction of Amendment. This Amendment is a "Loan Document" as that term is defined in the Loan Agreement. The headings herein are for convenience only and shall not be deemed to be part of this Amendment. Any references to any person or entity shall be construed in the masculine, feminine or neuter, singular or plural, as the context may require. Except as expressly provided herein, the Loan Agreement and the other Loan Documents previously executed shall remain in full force and effect in accordance with their respective terms, and this Amendment shall not be construed to: (1) release any Obligor from any Obligations; (2) impair the validity, perfection or priority of any security interest, mortgage, assignment, or other property interest securing the Obligations; (3) waive or impair any rights, power or remedies of Lender under the Loan Agreement and the Loan Documents; (4) constitute an agreement by Lender or require Lender to modify the terms of any Loan or extend the term of the Loan Documents or the time for payment of any of the Obligations; (5) make any loans or other extensions of credit to any Obligor; or (6) constitute a novation or satisfaction. In the event of any inconsistency between the terms of this Amendment and the Loan Agreement or any other Loan Documents, this Amendment shall govern. Borrower acknowledges that it has consulted with counsel and with such other experts and advisors as it has deemed necessary in connection with the negotiation, execution and delivery of this Amendment. This Amendment shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Amendment or any part hereof to be drafted.

2. Conditions Precedent.

(A) Effectiveness of Agreement. This Amendment shall not be effective as against Lender unless and until each of the following conditions shall have been satisfied on or before June 13, 2008:

(1) Borrower shall have paid Lender all of Lender's costs and expenses (including Lender's appraisal and attorneys' fees) incurred in connection with the negotiation, preparation and execution of this Amendment and the satisfaction of the conditions precedent.

(2) Each Signing Guarantor shall have executed the Reaffirmation and Consent at the end of this Amendment.

(3) Borrower shall have paid to Lender the $4,000.00 balance of the non-refundable extension fee provided for in paragraph 2 of the February 22, 2008 Omnibus Amendment between Lender and Borrower.

(4) Borrower shall have paid to Lender one-half of a non-refundable extension fee of $8,000.00. The balance of said extension fee is due and payable on the earlier of the Maturity Date (as defined in the Note, as amended by this Amendment) or on the date the Note is paid in full.

(B) Conditions for Lender's Benefit. These conditions precedent exist solely for Lender's

benefit, and Lender in its sole discretion shall determine whether they have been satisfied.

3. Amendment to Note. The third paragraph on page 1 of the Note is hereby amended to read as follows:

> *Principal and interest hereunder shall be payable as follows: consecutive monthly installments (the "Monthly Installments") of interest only commencing on the 15th day of December, 2005 and continuing on the 15th day of each month thereafter until the 15th of December, 2008 (the "Maturity Date"), when a balloon payment of principal and all unpaid interest and other sums due under this Note shall be due and payable.*

4. Reaffirmations.

(A) All representations of Borrower and/or the Guarantors in the Loan Documents previously executed are incorporated herein by reference as if fully stated herein and are true and correct as of the date hereof.

(B) Borrower and each Signing Guarantor reaffirm and restate all of the covenants, agreements, consents, and waivers (including the consents to jurisdiction, the waiver of the right to jury trial, and the waiver as to certain prejudgment remedies) in the Loan Documents previously executed as if fully set forth in this Amendment.

(C) Neither Borrower nor any Guarantor has any defense, offset, recoupment or counterclaim with respect to the Obligations.

(D) Borrower and each Signing Guarantor hereby releases Lender from any and all liability arising directly or indirectly with respect to the Obligations, any Loan Document, and any and all actions taken by Lender with respect to the transactions contemplated therein.

(E) Borrower and each Signing Guarantor hereby acknowledge the demand nature of all Obligations payable or performable upon demand by their terms.

5. Miscellaneous.

(A) Reservation of Lender's Rights. Notwithstanding any course of dealing or course of performance: (1) neither failure nor delay on the part of Lender to exercise any right, power, or privilege under any Loan Document or otherwise shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege under any Loan Document or otherwise preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (2) no notice to or demand upon Borrower or any Guarantor shall be deemed to be a waiver of the obligation of Borrower or any Guarantor or of the right of Lender to take further action without notice or demand; (3) failure by Lender to object to any action or inaction by any Obligor shall not be construed as Lender's approval of such action or inaction; and (4) no amendment, modification, rescission, waiver or release of any provision of any Loan Document shall be effective unless the same shall be in writing and signed by Lender.

(B) Benefit of Agreement. This Amendment shall be binding upon the Obligors and their respective successors and assigns, and inure to the benefit of and be enforceable by Lender, its successors and assigns. No other Person shall be entitled to claim any right or benefit hereunder, as third-party

beneficiary or otherwise.

(C) Severability. If any provisions of this Amendment shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or the remaining provisions of this Amendment in any jurisdiction.

(D) Lender's Fees And Expenses. Borrower will pay, whether or not any Loan is made hereunder, all costs, expenses and fees (including appraisals, audits, field examinations, environmental site assessments and reasonable counsel fees) incurred by Lender (1) in connection with the preparation, execution, and delivery hereof and the other Loan Documents and the making of any loan or other advance; (2) in connection with the administration of the Loan Documents and any matters arising thereunder or of any amendment of, or granting of any waiver or consent under, any Loan Documents; (3) costs of collection in case any Event of Default occurs; (4) incident to the enforcement of payment of any obligations of Borrower by any action or participation in, or in connection with, a case or proceeding under any Chapter of the Bankruptcy Code, or any successor statute thereto; and (5) in any dispute between the parties, whether incurred before or after any Loan is paid in full.

(E) Complete Agreement. This Amendment constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and thereof, and supersede all prior proposals, negotiations, agreements and understandings relating to such subject matter. In entering into this Amendment, Borrower acknowledges that it is relying on no statement, representation, warranty, covenant or agreement of any kind made by the Lender or any employee or agent of the Lender, except for the agreements of Lender set forth herein.

(F) Counterparts; Faxed Signatures. This Amendment may be executed in any number of counterparts and by different parties to this Amendment on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement. Any signature delivered by a party by facsimile transmission shall be deemed to be an original signature hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed under seal, all as of the day and year first above written.

Witness:

Holly E Slade

Elegant Homes LLC

By ______________________
Harry Zervas, duly authorized member

Holly E Slade

Navigant Credit Union

By ______________________
Jeffrey P. Cascione, Vice President



P:\Active Clients\RFC files\Navigant CU\Elegant Homes, LLC #08-2347\Amendment to Note.wpd

## GUARANTORS' REAFFIRMATION AND CONSENT

The undersigned are the Signing Guarantors referred to in the preceding Amendment. The undersigned hereby consent to the terms of the Amendment and hereby reaffirm, ratify and confirm their Guaranties in all respects. The undersigned further specifically consent to and join in the agreements, waivers and releases contained in the Amendment. The undersigned acknowledge that they have consulted with counsel in connection with the negotiation, execution and delivery of this Reaffirmation and Consent. The undersigned further acknowledge that they had no right to notice of, or to withhold consent from, the Amendment, and that this Reaffirmation and Consent confers no such rights upon Guarantors with respect to any other or subsequent change in any Obligations or in any Loan Documents.

Without limiting the foregoing, the undersigned Guarantors hereby acknowledge and agree that the failure of Lender to obtain (a) any other Guarantor's consent to the Amendment or to any previous amendment or (b) any other Guarantor's reaffirmation of his, her, or its guaranty shall not limit or otherwise affect the undersigned Guarantors' or any other Guarantors' liability to Lender under their respective guaranties.

Executed under seal this 23rd day of June, 2008.

Witness:

Holly E. Steele

Harry Zervas

Superb Builders, Inc.

Holly E. Steele

By
Harry Zervas, President