0006080 BOOK 1902 PAGE 96

**Exhibit B**

# MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FINANCING STATEMENT

This Mortgage, Security Agreement and Assignment of Leases and Rents and Financing Statement, dated this 15th day of November, 2005 is made by Elegant Homes, LLC, a Rhode Island limited liability company, having an address of 5 Princess Pine Road, Lincoln, Rhode Island 02865 ("Mortgagor"), in favor of CREDIT UNION CENTRAL FALLS, a Rhode Island credit union, having an address at 1005 Douglas Pike, Smithfield, Rhode Island 02917, ("Mortgagee").

Section 1. Definitions. Each reference in this Mortgage to the following terms shall be deemed to have the following meaning:

Bankruptcy Code: The federal bankruptcy code, 11 U.S.C. § 101 et seq. as the same now exists or may hereafter be amended.

Collateral: The Personal Property, the Proceeds, the Leases and Rents.

Default Condition: The existence of any Event of Default or the existence of any condition or state of facts which, with the giving of notice or passage of time, or both, would constitute an Event of Default.

Deposited Funds: Any and all sums deposited with Mortgagee pursuant to §5.5 of this Mortgage for payment of Impositions and insurance premiums.

Event of Default: Any event of default listed in §8 of this Mortgage.

Governmental Authority: Each and every national, state and local governmental body, department, agency or subdivision having jurisdiction over Mortgagor, any Guarantor or the Mortgaged Property or the Collateral or any part thereof or any use, operation or occupancy thereof.

Hazardous Waste: Any "hazardous substance" or "hazardous waste" as defined in the Hazardous Waste Laws, including, without limitation (whether or not included in the definition contained in the Hazardous Waste Laws), PCB's, asbestos, radon or other chemicals which would be materially dangerous to the environment or to human beings.

Hazardous Waste Laws: The Hazardous Waste Management Act of 1978, R.I.G.L. §23-19.1-1 et seq., as amended, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601 et seq., as amended, and any and all other federal, state or local laws governing the existence, release, generation, storage or disposal of any hazardous or toxic materials, and the regulations adopted pursuant thereto.

Impositions: Any and all taxes, assessments, water and sewer charges, and other charges of whatever nature which may at any time be assessed against, levied upon or constitute a lien on the whole or any part of the Mortgaged Property or the Collateral; or which otherwise might become a lien prior to this Mortgage or otherwise have priority in the distribution of the proceeds of a judicial sale and any and all interest, costs or penalties with respect to any and all unpaid taxes, assessments or charges.

Improvements: Any and all buildings and improvements now or hereafter located on the Premises.

Lease(s): Each and every agreement providing for use or occupancy of all or any part of the Mortgaged Property whether written or oral, whether now existing or hereafter arising, and any and all amendments, renewals and extensions thereof.

Lessee: Any tenant pursuant to a Lease.

Loan: The loan evidenced by the Note and Loan Agreement.

Loan Agreement: The Loan Agreement of even date herewith (sometimes referred to herein as the "Term Loan Agreement".

Loan Documents: The Note, the Loan Agreement, the Security Documents and the Other Documents.

Mortgage: This Mortgage, Security Agreement and Assignment of Leases and Rents.

Mortgaged Property: The term "Mortgaged Property" as defined in Section 2 hereof.

Note: The Promissory Note of even date herewith (sometimes referred to herein as the "Term Note").

Obligations: The term "Obligations" as defined in §3 of this Mortgage.

Other Documents: Any document, instrument or agreement, other than the Note, now or hereafter securing the Note or executed by Mortgagor or any Other Liable Party in connection with the Loan, the Loan Agreement, and the Security Documents.

Permitted Encumbrances: The liens and encumbrances, if any, listed on Exhibit A attached hereto and incorporated herein by reference and any real estate taxes and assessments with respect to the Premises and Improvements to the extent that the same are not yet due and payable.

Permitted Use: Retail and commercial use.

Person: Any individual, corporation, partnership, limited liability company, limited liability partnership, trust, unincorporated association, business, or other legal entity, and any government or any governmental agency or political subdivision thereof

Personal Property: Any and all fixtures, machinery, equipment and other personal property of every kind, now or hereinafter located in or upon or affixed to the Premises or Improvements or any part thereof, or now or hereafter used or to be used in connection with any present or future operation of the Premises or Improvements, or any part thereof, and now owned or hereafter acquired by Mortgagor, or in which Mortgagor now or hereafter has an interest, including, without limitation, any and all (i) all fixtures, appliances, furniture, equipment, furnishings, or other personal property now owned or hereinafter acquired by Mortgagor, and Mortgagor's interest in any fixtures, appliances, furniture, equipment under lease or otherwise, and used in connection with or located on the Premises; (ii) all permits, licenses and approvals granted, given or issued in connection with the occupancy, use and operation of the Premises; (iii) all books and records relating to the operation and maintenance of the Premises; (iv) all plans, specifications and contracts relating to construction on the Premises and (v) all materials, supplies and improvements thereon whether or not the same are located on the Premises and Mortgagor does hereby grant and convey to Mortgagee a security interest therein.

Premises: A parcel of land located at 15 Dennell Drive, Lincoln, Rhode Island, and more particularly described in Schedule A attached hereto and incorporated herein by reference.

Proceeds: Any and all proceeds payable or paid for, with respect to any or as a result of, damage or loss to the Premises, Improvements and Personal Property, or any part thereof, including, without limitation, insurance proceeds, and all awards in connection with any condemnation or other taking of the Premises, Improvements and Personal Property, or any part thereof, or for conveyance in lieu thereof.

Registered Agent: Tarek Wehbe
5 Princess Pine Road
Lincoln, RI 02865

Rents: Any and all rents and other payments of every kind due and payable and to become due and payable to Mortgagor by virtue of the Leases, or otherwise due or payable and to become due or payable to Mortgagor as the result of any use, possession or occupancy of all or any part of the Mortgaged Property.

Security Documents: (I) this Mortgage, (ii) any security agreement securing the Note, (iii) any guaranty of the obligations of Mortgagor under the Note, and any security document,

instrument, or agreement now or hereafter securing any such guaranty, (iv) the UCC-I Financing Statements perfecting the security interest granted herein and in the other Security Documents; and (v) any other document now or hereafter securing the Note or the Loan.

Term Note: The Term Note of even date herewith executed by Mortgagor in connection with the Term Loan Agreement in the stated principal amount of EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($800,000.00) at the rate of six and one half (6.50%) percent per annum. The Maturity Date for the Term Note is May 15, 2007, when a balloon payment of principal and all unpaid interest shall be due and payable.

Section 2. Granting Clause.

For consideration paid and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Mortgagor hereby grants, bargains, sells, conveys, transfers and assigns to Mortgagee, its successors and assigns, forever, WITH MORTGAGE COVENANTS, and Mortgagor hereby grants to Mortgagee, its successors and assigns a security interest in, the following described real and personal property:

(I) the Premises;

(ii) the Improvements;

(iii) the Personal Property;

(iv) any and all easements, rights of way, privileges, hereditaments and appurtenances now or hereafter belonging to or inuring to the benefit of the Premises and/or Improvements or any part thereof; all right, title and interest of Mortgagor in and to the land lying within any street or roadway adjoining the Premises or any part thereof; and all right, title and interest of Mortgagor in and to any now or hereafter vacated streets or roads adjoining the Premises or any part thereof;

(v) any and all issues, benefits and profits of the Premises and/or Improvements;

(vi) the Proceeds;

(viii) all of Mortgagor's right, title and interest in and to any name under which the Premises and/or Improvements may at any time be operated and any variation thereof and the goodwill of Mortgagor in connection therewith.

All of which Premises, Improvements, Personal Property, Proceeds and other property hereby granted, sold and conveyed, or intended so to be, are collectively referred to as the "Mortgaged Property."

TO HAVE AND TO HOLD the Mortgaged Property unto and to the use of Mortgagee, its successors and assigns forever.

Section 3. Obligations Secured.

This conveyance is made to secure the following obligations (collectively, the "Obligations"):

(a) Payment of the indebtedness of Mortgagor to Mortgagee evidenced by the Term Note;

(b) Payment by Mortgagor to Mortgagee of any and all sums expended or advanced by Mortgagee pursuant to any term or provision of this Mortgage; and

(c) Payment, performance and observance by Mortgagor of each and every covenant, condition and obligation contained in the Note, the Loan Agreement, this Mortgage, the other Security Documents and any other document, instrument or agreement now or hereafter given by Mortgagor as additional security for the payment of the indebtedness hereby secured, or otherwise executed in connection therewith.

Section 4. Representations and Warranties.

Mortgagor represents and warrants that:

4.1 The Mortgaged Property and the use thereof for the Permitted Use do not violate (a) any building, zoning, subdivision, land-use, health, sanitation, environmental protection or other law, ordinance, rule or regulation promulgated by any Governmental Authority or (b) any deed, plat or other restriction of any kind applicable to the Mortgaged Property;

4.2 All utilities and services necessary for the operation of the Mortgaged Property for the Permitted Use and in accordance with each Lease (a) are available at the boundary of the Premises and are connected to the Improvements, (b) are operational and (c) are of sufficient capacity to adequately service the operation of the Improvements;

4.3 There are no party wall agreements or easements across or affecting the Mortgaged Property which have any adverse effect on the operation of the Mortgaged Property;

4.4 The Improvements are not located in a designated flood hazard area, as defined in the Flood Disaster Protection Act of 1973 (P.L. 93-234), as amended; and

4.5 Neither the making of the Loan nor Mortgagee's acceptance of the Loan Documents will subject Mortgagee to any claim for a brokerage commission, finder's fee or like charge by

virtue of any action of Mortgagor.

Section 5. Mortgagor's Covenants. Mortgagor covenants and agrees with Mortgagee as follows:

5.1 Title.

Mortgagor has good and clear record and marketable title in fee simple to the Mortgaged Property subject only to the Permitted Encumbrances; this Mortgage is and will remain a valid and enforceable lien on the Mortgaged Property; Mortgagor has full power and lawful authority to grant, sell and convey the Mortgaged Property in the manner and form herein done; and Mortgagor will preserve such title, will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all Persons whatsoever, except the holders of the Permitted Encumbrances. Mortgagor agrees to deliver, within ten (10) days after the date hereof, an ALTA standard form of Mortgagee's title insurance policy with respect to the Premises, in the amount of the Term Note, insuring the lien of this Mortgage as a good and valid first lien subject only to the Permitted Encumbrances, and containing such endorsements and affirmative coverage as have been requested by or on behalf of Mortgagee prior to the recording hereof or as Mortgagee otherwise reasonably may require.

5.2 Payment and Performance of Obligations.

5.2.1 Mortgagor shall pay all indebtedness secured by this Mortgage at the time or times and in the manner provided in this Mortgage, the Term Note, or any other instrument secured by this Mortgage.

5.2.2 Mortgagor will perform and observe all the terms, provisions, covenants and conditions imposed upon Mortgagor under each and every of the Loan Documents, all at the time or times and in the manner provided therein.

5.3 Insurance.

5.3.1 Mortgagor shall keep the Improvements continuously insured against loss by fire and the risks covered under a so-called "extended coverage endorsement", including, but not limited to, flood, explosion of boilers, heating apparatus and other pressure vessels, and such other hazards, casualties and contingencies as Mortgagee from time to time reasonably may require, in an amount equal to one hundred percent (100%) of the replacement cost of the Improvements. The insurance policy evidencing such coverage: (a) upon request of Mortgagee, shall be endorsed with an Agreed Amount Endorsement, (b) upon request of Mortgagee, shall be endorsed with a Loss of Rents Endorsement or Business Interruption Insurance for a six (6) month period in an amount reasonably satisfactory to Mortgagee, and (c) shall contain a deductible reasonably satisfactory to Mortgagee. The amount of such insurance coverage shall be reviewed not less than annually and increased whenever necessary so as to provide the

required coverage.

5.3.2 Mortgagor shall continuously keep in full force and effect a policy of public liability insurance and (if relevant) elevator insurance, against claims for bodily injury, death or property damage occurring upon, in or about the Mortgaged Property or any part thereof in which the limits of liability shall not be less than One Million Dollars ($1,000,000) per person and One Million Dollars ($1,000,000) per accident and in which the property damage limits shall not be less than One Million Dollars ($1,000,000) together with an all risk liability policy in the amount of Two Million Dollars ($2,000,000) which shall be in addition to the limits above set forth. Mortgagor agrees to increase the limits of such liability insurance to such higher amounts as Mortgagee from time to time reasonably may require.

5.3.3 All such insurance shall be evidenced by valid and enforceable policies in form and substance reasonably satisfactory to Mortgagee. Without limiting the generality of the foregoing: (a) all such insurance policies shall contain an endorsement requiring twenty (20) days' written notice to Mortgagee prior to cancellation or change in the coverage, scope or amount of any such policy or policies, and (b) any and all policies evidencing casualty insurance shall provide that any and all loss shall be payable to Mortgagee and such loss shall be payable to Mortgagee notwithstanding any act or omission of Mortgagor which might otherwise result in cancellation or forfeiture of said insurance. Mortgagor shall deliver to Mortgagee evidence satisfactory to Mortgagee of the issuance of renewal or replacement policies not less than thirty (30) days prior to the expiration date of the policy to be renewed or replaced, accompanied, if requested by Mortgagee, by evidence satisfactory to Mortgagee that all premiums payable with respect to such policies have been paid in full by Mortgagor. From time to time, upon the request of Mortgagee, Mortgagor shall provide Mortgagee with evidence of insurance satisfactory to Mortgagee evidencing that Mortgagor has in full force and effect the insurance coverage required hereunder.

5.3.4 Mortgagor shall have the right of free choice in the selection of the agent or insurer through or by which the insurance required hereunder is placed; provided, however, that said insurer is authorized to write such insurance in the state in which the Premises is located, has a licensed resident agent in said state and has, at all times while this Mortgage is in effect, a general policyholder's rating of A or A+ in Best's latest rating guide.

5.3.5 Mortgagee shall be, and is hereby, authorized and empowered, for and in the name or names and on behalf of Mortgagor and/or Mortgagee, and for the purposes hereinafter set forth, shall be and is hereby made, constituted and appointed the true and lawful attorney-in-fact of Mortgagor (with full power of substitution and revocation), and in the sole and uncontrolled discretion of said attorney, after consultation with Mortgagor, exercisable on or after the occurrence of an Event of Default, (a) to demand, adjust, sue for, settle, compromise and collect any amounts due under such insurance policies in the event of loss, and (b) to give releases for any and all amounts received in settlement of loss under such policies. The foregoing appointment, being coupled with an interest, is irrevocable until the Obligations are paid and

otherwise satisfied in full.

5.3.6 Upon the occurrence of any damage or destruction of all or any part of the Mortgaged Property, at the option of Mortgagee, the Obligations shall become immediately due and payable, and at the option of Mortgagee, all amounts paid under such policies of insurance as are referred to in this Mortgage may be applied, after first deducting the costs of collection, to the payment of the Obligations, whether or not then due, in the order set forth in subsection 5.11.3 of this Mortgage.

5.3.7 If Mortgagee shall by any manner acquire title to the Mortgaged Property, Mortgagee shall thereupon become the sole and absolute owner of all insurance policies held by or required hereunder to be delivered to Mortgagee, with sole right to collect and retain all unearned premiums and dividends thereon, and Mortgagor shall only be entitled to a credit, in reduction of the then outstanding indebtedness secured hereby, in the amount of the short rate cancellation refund.

5.4 Payment of Taxes and Liens.

5.4.1 Mortgagor shall pay, when due, all Impositions and shall, if requested by Mortgagee, furnish to Mortgagee, promptly after payment of the same, certificates, receipts or other evidence reasonably satisfactory to Mortgagee of such payment.

5.4.2 Mortgagor shall pay, when the same shall become due and payable, all claims and demands of mechanics, materialmen, laborers and others which, if unpaid, might result in or permit the creation of a lien on the Mortgaged Property or any part thereof.

5.4.3 Mortgagor shall pay to Mortgagee, within thirty (30) days after Mortgagee's demand on or after the occurrence of an Event of Default, an amount equal to any and all taxes, assessments or charges of whatever nature (other than taxes on the net income of Mortgagee) which may at any time be assessed against Mortgagee with respect to the Note or this Mortgage or its ownership or holding thereof, whether under statutes now or hereafter in effect. In the event any such tax, assessment or charge is not or, under applicable law, cannot be so paid by Mortgagor, at the option fo Mortgagee, the Obligations shall become immediately due and payable.

5.5 Deposited Funds. Following the occurrence of an Event of Default hereunder, Mortgagee may, at its option, exercisable from time to time, require Mortgagor to deposit with Mortgagee an amount equal to the amount estimated by Mortgagee to be sufficient to pay all Impositions and other charges which may be imposed or assessed against the Mortgaged Property, or the Mortgage, or which may arise in respect of the occupancy, use or possession of the Mortgaged Property. Such deposit shall be held by Mortgagee without liability to pay interest thereon, and on or before the dates on which they would become delinquent shall be applied by Mortgagee to the payment of such obligations as are determined by Mortgagee to be payable. If,

within one (1) month prior to the due date of any such obligations, the deposit shall be insufficient to pay the obligations in full, Mortgagor shall, within ten (10) days after Mortgagee's demand, deposit with Mortgagee an amount sufficient to cover such deficiency.

5.6 Maintenance.

5.6.1 Mortgagor shall at all times keep and maintain the Mortgaged Property and each part thereof in sound condition and in a good state of decoration and repair.

5.6.2 Mortgagor shall not: permit any strip or waste of the Mortgaged Property; permit the violation of any law, ordinance or rule or regulation of any Governmental Authority affecting the Mortgaged Property or the use thereof, permit any conditions to exist which would wholly or partially invalidate any insurance on the Mortgaged Property; or do or permit anything to be done to the Mortgaged Property or any part thereof that might materially diminish its value.

5.6.3 Mortgagor, within thirty (30) days after written demand by Mortgagee or immediately upon demand in cases which Mortgagee deems to be an emergency, shall make such repairs, replacements, renewals, or additions or perform such items of maintenance to the Mortgaged Property or any part thereof as Mortgagee reasonably may require in order to maintain the Mortgaged Property at the standards required by this §5.

5.7 Alterations and Additions.

Mortgagor shall not remove or demolish any Improvements, or make any material alteration or addition to the Improvements, including, without limitation, changes to the character, design, structure or size of the Improvements, without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld.

5.8 Management and Operation.

Mortgagor will continuously provide management for the Mortgaged Property reasonably satisfactory to Mortgagee and operate the Mortgaged Property for the Permitted Use.

5.9 Compliance with Laws and Restrictions.

5.9.1 Mortgagor promptly shall comply with all present and future laws, ordinances, rules, regulations, directives and other requirements of all Governmental Authorities.

5.9.2 Mortgagor shall comply with all restrictive covenants and other private restrictions applicable to the Mortgaged Property.

5.10 Hazardous Waste.

5.10.1 Mortgagor hereby warrants and represents to Mortgagee that (a) Mortgagor has never released, generated, stored or disposed of any Hazardous Waste on the Mortgaged Property, (b) Mortgagor is not aware of the existence, release or threat of release of any Hazardous Waste on or from the Mortgaged Property or on or from any property adjacent to the Mortgaged Property, (c) Mortgagor has not received any notice, order, claim or demand from the United States Environmental Protection Agency ("EPA") or any state or local governmental agency, authority or body having jurisdiction over Hazardous Waste or the storage or removal thereof (collectively, a "State agency") with respect to the existence, release or threat of release of any Hazardous Waste, and (d) there has been no change in the condition of the Mortgaged Property that would result in a change of any of the conclusions or recommendations set forth in any environmental site assessment report submitted to Lender or any holder of a Permitted Encumbrance.

5.10.2 Mortgagor shall not release, generate, store or dispose of any Hazardous Waste on the Mortgaged Property or on any property adjacent to the Mortgaged Property, except in compliance with Hazardous Waste Laws.

5.10.3 Mortgagor shall immediately notify Mortgagee in writing of (a) any and all enforcement, clean-up, removal or other action instituted or threatened by the EPA or any State agency pursuant to any Hazardous Waste Laws, and (b) any and all claims made or threatened by any third party against Mortgagor or the Mortgaged Property or any part thereof, relating to the existence of, or damage, loss or injury from, any Hazardous Waste; and Mortgagee, to the extent permitted by applicable law, shall have the right to join and participate in, as a party if it so elects, any proceedings, or actions initiated in connection with any such claim and to have all of its reasonable costs and expenses, including, without limitation, reasonable attorneys' fees, in connection therewith paid by Mortgagor.

5.10.4 In the event that any Hazardous Waste is found on or in the Mortgaged Property in violation of any applicable laws, Mortgagor shall immediately contain and remove the same in compliance with all Hazardous Waste Laws.

5.10.5 Mortgagor agrees to indemnify and hold Mortgagee harmless from and against any and all claims, liabilities, reasonable costs and expenses incurred by Mortgagee, including, without limitation, costs of litigation and reasonable attorneys fees, arising from the release, existence or removal of any Hazardous Waste on or in the Mortgaged Property or on any properties adjacent to the Mortgaged Property. THIS RIGHT OF INDEMNIFICATION SHALL SURVIVE THE PAYMENT IN FULL OF THE NOTE, NOTWITHSTANDING ANY DISCHARGE OF THIS MORTGAGE.

5.10.6 Mortgagee, at its election and in its sole discretion, at any time and from time to time, whether or not a Default Condition shall exist, may cause one or more environmental site assessments of the Mortgaged Property to be undertaken. Environmental site assessments may include, without limitation, a detailed visual inspection of the Mortgaged Property and any part

thereof, as well as the taking of soil samples, water samples and such other investigation or analysis as is necessary or appropriate for a complete assessment of whether any Hazardous Waste exists on or in the Mortgaged Property or any part thereof and the compliance of the Mortgaged Property with all Hazardous Waste Laws. If Mortgagee causes any such environmental site assessment to be undertaken because Mortgagee has reason to suspect Hazardous Waste may be present on the Mortgaged Property or any part thereof, or if Mortgagee causes the same to be undertaken without such reason but such environmental site assessment discloses Hazardous Waste is present, or if Mortgagee causes such environmental site assessment to be undertaken in contemplation of foreclosure of this Mortgage, Mortgagor shall pay the reasonable cost thereof to Mortgagee on demand of Mortgagee, and until paid the cost thereof shall be added to the unpaid principal of the Obligations, shall bear interest at the rate set forth in the Term Note, and the payment thereof, together with such interest, shall be secured by the lien of this Mortgage and other Security Documents.

5.10.7 Mortgagee, at its election and in its sole discretion, may (but shall not be obligated to) cure any failure on the part of Mortgagor or any Lessee or other user of the Mortgaged Property or any part thereof (any such Lessee or other user being, in this Section 5, hereinafter referred to as a "User") to comply with the Hazardous Waste Laws; such cure may include, without limitation, the following actions:

(a) arranging for the cleanup or containment of Hazardous Waste found in, on or near the Mortgaged Property and paying for such cleanup and containment costs and other costs associated therewith;

(b) paying on behalf of Mortgagor or any User, any fines or penalties imposed on Mortgagor or any User by the EPA or any State agency in connection with Hazardous Waste; and

(c) making any other payment or performing any other act which may prevent a release of Hazardous Waste, facilitate the cleanup thereof, or prevent a lien from attaching to the Mortgaged Property.

Any partial exercise by Mortgagee of the remedies set forth in this sub-section 5.10.7 or any partial undertaking on the part of Mortgagee to cure the failure of Mortgagor or a User to comply with the Hazardous Waste Laws, shall not obligate Mortgagee to complete any action taken or require Mortgagee to expend further sums to cure Mortgagor's or any User's noncompliance; and the exercise of any such remedies shall not place upon Mortgagee any responsibility for the operation, control, care, management or repair of the Mortgaged Property, or make Mortgagee the "owner" or operator" of the Mortgaged Property or a "responsible party" within the meaning of any of the Hazardous Waste Laws. Any amounts paid or costs incurred by Mortgagee in the exercise of any of its rights under this subsection 5.10.7, together with interest thereon at the interest rate set forth in the Term Note from the date of payment, shall be paid by Mortgagor on demand of Mortgagee, and until paid shall be added to the unpaid principal of the

Obligations, shall bear interest at the interest rate set forth in the Term Note, and the payment thereof, together with such interest, shall be secured by the lien of this Mortgage and by the other Security Documents. Mortgagee, by making any such payment or incurring any such costs, shall be subrogated to any rights of Mortgagor or any User to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to Mortgagor's title to the Mortgaged Property or any part thereof.

5.11 <u>Condemnation</u>.

5.11.1 Mortgagor shall give notice to Mortgagee forthwith upon the receipt by Mortgagor of notice of the institution of any proceeding or negotiations for the taking of the Mortgaged Property, or any part thereof, in condemnation or by the exercise of The power of eminent domain. Mortgagee may appear in any such proceedings and participate in any such negotiations and may be represented by counsel. Mortgagor, notwithstanding that Mortgagee may not be a party to any such proceeding, will promptly give to Mortgagee copies of all notices, pleadings, judgments, determinations and other papers received by Mortgagor in such proceeding. Mortgagor will not enter into any agreement for the taking of the Mortgaged Property, or any part thereof, with anyone authorized to acquire the same in condemnation or by eminent domain unless Mortgagee shall first have consented thereto in writing, which consent shall not be unreasonably withheld or delayed.

5.11.2 Any award, whether paid as a result of a negotiated settlement or judgment, shall be paid to Mortgagee, and Mortgagee shall have the right and is hereby constituted and appointed the true and lawful attorney-in-fact of Mortgagor, in the name and stead of Mortgagor, and in the discretion of said attorney, to collect and receive the total amount of such award, including interest, and to give proper receipts and acquittances therefor. The foregoing appointment, being coupled with an interest, is irrevocable until the Obligations are paid and otherwise satisfied in full.

5.11.3 In the event of any taking of the Mortgaged Property or any material part thereof in condemnation or by exercise of the power of eminent domain, at the option of Mortgagee, the Obligations shall become immediately due and payable, and, at the option of Mortgagee, all awards paid or payable to Mortgagor on account of such taking shall be applied to the payment and discharge of the Obligations, whether or not then due, such application to be in the following order of priority: (a) payment of all amounts expended, advançed or incurred by Mortgagee in the discharge of Mortgagor's obligations hereunder; (b) payment of expenses referenced in subsection 5.19 hereof, (c) payment of accrued interest under the Term Note; (d) payment of unpaid principal under the Term Note; and (e) payment and satisfaction of any and all other Obligations. To the extent that such award or awards exceed the amount required to pay in full the Obligations set forth in the proceeding sentence, principal and interest under the Term Note and all other sums and charges then secured hereby, Mortgagee shall pay over to the person or persons legally entitled thereto the amount of such excess; provided, however, that until the actual vesting of title in the condemning authority in such proceeding or pursuant to any

agreement in lieu or in settlement thereof, the obligations of Mortgagor to pay, perform and observe the terms, covenants and conditions of the Term Note and this Mortgage shall continue unimpaired. In no event shall Mortgagee be required to satisfy or discharge this Mortgage until all of the Obligations, and the obligations which it secures, are paid and otherwise satisfied in full.

5.11.4 Mortgagor shall pay interest on the Term Note and other indebtedness forming part of the Obligations at the rate or rates provided for therein, notwithstanding any lesser rate required to be paid by the authorities making such award or awards.

5.12 Records. Financial Statements and Inspections.

Forthwith on Mortgagee's request, Mortgagor shall furnish such financial statements and other information bearing on the financial condition of Mortgagor and the status and progress of the operation of the Mortgaged Property, as Mortgagee may from time to time reasonably request, but if there is no event of default hereunder, not more than twice each calendar year.

5.13 Alienation.

5.13.1 Except for the execution of Leases in accordance with the terms of the Assignment of Leases and Rents set forth below, Mortgagor shall not, directly or indirectly, sell, convey, mortgage, pledge, hypothecate, encumber, lease, assign or otherwise transfer the Mortgaged Property or any part thereof or any interest therein without the prior written consent of Mortgagee, which shall not be unreasonably withheld or delayed.

5.13.2 Without limiting the generality of the foregoing, Mortgagor will not create, join or consent to any private restrictive covenant or other restriction affecting the Mortgaged Property or any part thereof, without the prior written consent of Mortgagee.

5.14 Senior or Junior Indebtedness.

Mortgagor shall pay any and all indebtedness secured by any mortgage creating a senior or prior lien, if any, or junior or subordinate lien, if any, on the whole or any part of the Mortgaged Property and perform all covenants, terms and conditions contained in any such mortgage on the part of Mortgagor to be performed and observed, all within the periods provided for payment, performance and observance in any such mortgage; provided, however, the foregoing shall not be deemed to be a consent by Mortgagee to the creation of any such senior or junior lien or indebtedness.

5.15 Preservation of Easements and Zoning.

5.15.1 Mortgagor, to the extent reasonably within its control, shall maintain, preserve and renew any and all easements, rights of way, privileges and hereditaments now or hereafter

belonging or inuring to the benefit of the Premises and/or Improvements or any part thereof

5.15.2 Without the prior consent of Mortgagee, Mortgagor will not initiate, create, join in or consent to any change of zoning with respect to the Mortgaged Property of any part thereof.

5.16 Mortgagee's Right to Pay or Perform Mortgagor's Covenants.

If Mortgagor fails, as required under this Mortgage, (a) to maintain insurance or pay the premiums therefor, (b) to pay and furnish receipts for all Impositions, (c) to pay for all labor and materials or to otherwise pay any claim which might result in or permit the creation of a lien on the Mortgaged Property or any part thereof, (d) to maintain or repair the Improvements, (e) to provide management or security for the Mortgaged Property, or (f) to pay any indebtedness secured by a lien or encumbrance on the Mortgaged Property or any part thereof (other than the Note), or if Mortgagor fails to otherwise pay, perform or observe any of Mortgagor's other covenants contained in this Mortgage, Mortgagee, at its option, may procure such insurance, pay such Impositions and any penalty and interest thereon, redeem the Mortgaged Property or any part thereof from any tax sale, procure such receipts, pay for such labor and materials, pay any such claim, do such maintenance or make such repairs, retain and pay for such management and/or security, pay any and all such liens and encumbrances and/or otherwise disburse such sums and/or take such action as Mortgagee reasonably deems necessary or appropriate (i) to cause compliance with Mortgagor's covenants under this Mortgage and/or (ii) to protect Mortgagee's interest and/or the Mortgaged Property or any part thereof, and all reasonable amounts advanced by Mortgagee for the payment thereof and all expenses so incurred by Mortgagee, unless otherwise agreed in writing, shall be paid by Mortgagor to Mortgagee on demand of Mortgagee, and until paid such amounts shall be added to the unpaid principal of the Obligations, shall bear interest at the rate set forth in the Term Note, and the payment thereof, together with such interest, shall be secured by the lien of this Mortgage and the other Security Documents. The failure of Mortgagee to take any such action shall not render Mortgagee liable to Mortgagor or any third party.

5.17 Proceedings and Indemnification.

5.17.1 If Mortgagor becomes a party defendant to any action or other proceeding brought by a third party concerning or otherwise affecting (a) this Mortgage or the construction or operation thereof, (b) the Loan or (c) the Mortgaged Property or any part thereof or any interest therein, Mortgagor shall: (I) promptly inform Mortgagee of the commencement thereof and thereafter timely apprise Mortgagee of all material developments therein; (ii) not take any position therein which would materially and adversely affect the interest of Mortgagee; (iii) cooperate fully with Mortgagee with respect thereto; and (iv) consent to Mortgagee's becoming a party thereto, at the election of Mortgagee and to the extent permitted by law.

5.17.2 If Mortgagee becomes a party defendant to any action or other proceeding described in subsection 5.17.1 above, whether before or after payment in full of the Obligations,

Mortgagor shall indemnify, defend and hold Mortgagee harmless from any and all liability by reason of each and every such action, including, without limitation, reasonable attorneys' fees and expenses incurred by Mortgagee in any such action, whether or not any such action is prosecuted to judgment. This right of indemnification shall survive the payment in full of the Note, notwithstanding any discharge of this Mortgage.

5.18 Further Assurances.

5.18.1 Mortgagor shall not do or suffer any act or thing to be done which would impair all or any part of the security for the payment of the Obligations, this Mortgage or the other Security Documents.

5.18.2 Mortgagor, within ten (10) days after request by Mortgagee, shall furnish to Mortgagee a written statement, duly acknowledged, of the amount of the unpaid balance of the Term Note and of the existence of any offsets or defenses against the Term Note, and containing such other information as Mortgagee may reasonably request.

5.18.3 At any time and from time to time until payment in full of the Obligations, upon request of Mortgagee, Mortgagor will promptly execute, acknowledge and deliver to Mortgagee such additional instruments, and shall take such further actions, all at the expense of Mortgagor, as Mortgagee may reasonably require to further confirm, evidence or protect the lien of this Mortgage, the security position of Mortgagee with respect to the Mortgaged Property or any part thereof and the property and rights conveyed by this Mortgage to or conferred on Mortgagee, or intended to so be, including, without limitation, the execution, acknowledgment and delivery of additional mortgages, security agreements, financing statements, continuation statements and the like.

5.19 Expenses.

Mortgagor shall pay to Mortgagee on demand of Mortgagee any and all expenses reasonably incurred or paid by Mortgagee in connection with or incident to (a) negotiation, closing and administration of the Loan, which shall include only, charges for examining public records in connection with advances of the proceeds of the Loan, costs of title examinations and title insurance, inspections, recording and filing fees, revenue stamps, if any, and fees and disbursements of attorneys, architects and engineers engaged by Mortgagor, and (b) the collection or enforcement of any or all of the Obligations or rights of Mortgagee under the Note, the Security Documents or any Other Document, whether by litigation, foreclosure or otherwise, including, without limitation, attorneys' fees to the extent permitted by law and further including, without limitation, attorneys' fees for any and all appellate proceedings, to the extent permitted by law; and all such expenses, until paid, shall be added to the unpaid principal of the Obligations, shall bear interest at the rate set forth in the Term Note, and the payment thereof, together with such interest, shall be secured by the lien of this Mortgage and the other Security Documents.

Section 6. Assignments of Leases and Rents.

6.1 Mortgagor does hereby transfer, assign and deliver unto Mortgagee the Leases, the Rents and all right, title and interest of Mortgagor in and to any and all guarantees of any of the Leases: TO HAVE AND TO HOLD the Leases, the Rents and said guarantees, together with all the rights, privileges and appurtenances now or hereafter in any way belonging or pertaining thereto, unto Mortgagee, its successors and assigns, forever, subject, however, to the terms and conditions hereinafter provided in this §6.

6.2 Mortgagor hereby authorizes and empowers Mortgagee to collect the Rents as the same shall become due, and hereby irrevocably directs each and all of the Lessees and sublessees to pay to Mortgagee, upon demand by Mortgagee, the Rents as may now be due or payable and/or shall hereafter become due or payable; provided however, no such demand shall be made by Mortgagee unless and until there shall have occurred an Event of Default. Until such demand is made, Mortgagor shall have and Mortgagee grants to Mortgagor a license to collect or continue to collect the Rents; upon such demand Mortgagor's license shall cease.

6.2.1 Mortgagor's right to collect or continue to collect the Rents, as set forth in §6.2, shall not authorize Mortgagor to collect any installment of rent or any other payment (exclusive of security deposits) more than one (1) month in advance of the respective dates prescribed in the Leases or otherwise for the payment thereof without the prior written consent of Mortgagee.

6.2.2 No Lessee, sublessee, tenant or other occupant of the Mortgaged Property making any payment to the Mortgagee pursuant to this §6 shall be under any obligation to inquire into or determine the actual existence of any default claimed by Mortgagee.

6.3 Mortgagee shall be and hereby is authorized and empowered, for and in the name or names and on behalf of Mortgagor and/or Mortgagee, and for the purposes hereinafter set forth, shall be and hereby is made, constituted and appointed the true and lawful attorney-in-fact of Mortgagor (with full power of substitution and revocation) and in the name, place and stead of Mortgagor, to cause the assignment to Mortgagee of any Lease which has not been so assigned after request therefor by Mortgagee in the sole and uncontrolled discretion of Mortgagee as Mortgagor's attorney. The foregoing appointment, being coupled with an interest, is irrevocable until the Obligations are paid and otherwise satisfied in full.

6.4 Mortgagor shall not enter into any Lease without first obtaining Mortgagee's written approval of the terms and conditions of and the Lessee under such Lease, which consent shall not be unreasonably withheld or delayed.

6.5 The provisions of the Assignment of Leases and Rents and the powers granted to Mortgagee under §9 of this Mortgage shall in no respect operate to place upon Mortgagee any responsibility or obligation to take any action whatsoever with respect to the operation, control, care, management or repair of the Mortgaged Property and any action taken or failure or refusal

to act by Mortgagee shall be at Mortgagee's election and without any liability on its part.

Section 7. <u>Security Agreement</u>.

7.1 This Mortgage also shall constitute a security agreement, financing statement, and fixture filing within the meaning of the applicable Uniform Commercial Code, and is to be filed or recorded in the office where a mortgage on the Premises would be filed or recorded.

7.2 Mortgagor warrants and covenants that:

7.2.1 Except for the security interest granted by this Mortgage and the Permitted Encumbrances, Mortgagor is, or upon acquiring rights in any of the Collateral will be, the owner of the Collateral free from any other lien, security interest or encumbrance; and Mortgagor will defend the security interest of Mortgagee in the Collateral against claims and demands of all Persons at any time claiming the same or any interest therein.

7.2.2 Except for the Permitted Encumbrances, no financing statement covering any Collateral is on file in any public office, and at the request of Mortgagee, Mortgagor will join with Mortgagee in executing one or more financing statements pursuant to the Uniform Commercial Code in form satisfactory to Mortgagee and will pay the cost of filing or recording the same in all public offices wherever filing or recording is deemed by Mortgagee to be necessary or desirable.

7.3 Mortgagor hereby authorizes Mortgagee to file financing and continuation statements with respect to the Collateral without the signature of Mortgagor whenever lawful.

7.4 Mortgagor will not remove or permit to be removed from the subject property any of the Personal Property, except in the ordinary course of business, without the prior written consent of Mortgagee unless the same is immediately replaced with unencumbered fixtures, chattels or articles of personal property, as the case may be, of a quality, value and utility equal or superior to those which they replace. All such replacements, renewals and additions shall become and be immediately subject to the security interest of this Mortgage and be covered thereby.

Section 8. <u>Events of Default</u>.

The occurrence of any one or more of the following events shall constitute an "Event of Default":

8.1 Nonpayment of any installment of principal and/or interest due under the Term Note when it shall become due and payable (no prior demand therefore being necessary) and such nonpayment shall have continued for more than ten (10) days.

8.2 Nonpayment of any other sum payable under this Mortgage, the Note, the Loan Agreement, any of the Security Documents or any of the Other Documents and, unless a different

grace or notice period is elsewhere specified, such nonpayment shall have continued for more than ten (10) days after written notice thereof from Mortgagee to Mortgagor.

8.3 Nonperformance or nonobservance of any of the other covenants, agreements, or conditions of this Mortgage, the Loan Agreement, any of the other Security Documents or Other Documents, and, unless a different grace or notice period is elsewhere specified, such nonperformance or nonobservance shall have continued for more than thirty (30) days after written notice thereof from Mortgagee to Mortgagor. The foregoing shall not be deemed to provide a grace or notice period for nonperformance or nonobservance of any covenant, agreement or condition which is specifically listed as an Event of Default in any other subsection of this §8 or in the Note.

8.4 The occurrence of any "Event of Default" or "Default" under the Note, the Loan Agreements, any of the other Security Documents or any of the Other Documents or under any note, loan agreement or other document which Mortgagor has with Mortgagee, or the occurrence of any event or condition which would entitle Mortgagee to exercise any of its remedies under any of the Security Documents or any of the Other Documents.

8.5 Title to the Mortgaged Property is not satisfactory to Mortgagee by reason of any lien, charge, encumbrance, title condition or exception (other than Permitted Encumbrances) and such condition continues for more than thirty (30) days after written notice thereof from Mortgagee to Mortgagor.

8.6 Any survey, report or examination discloses that the Improvements or any portion thereof encroach upon or project over a street or upon or over adjoining property, and such condition shall have continued for more than thirty (30) days after written notice thereof from Mortgagee to Mortgagor, and in the reasonable judgment of Mortgagee such encroachment will have a material adverse effect on the Loan.

8.7 The Mortgaged Property is materially damaged or destroyed by fire or otherwise, and such loss is not fully insured.

8.8 The cancellation, lapse or termination of any insurance coverage required to be maintained by Mortgagor under the Loan Agreements, this Mortgage or any of the other Security Documents.

8.9 The Mortgaged Property or any part thereof or any interest therein is conveyed, voluntarily encumbered or otherwise transferred in any way without the prior written consent of Mortgagee.

8.10 If any notice of responsibility, notice of violation, notice letter or similar notice or claim is issued or filed by the EPA or any State agency against Mortgagor or the Mortgaged Property under any of the Hazardous Waste Laws and within ninety (90) days after the issuance

or filing thereof either (a) the condition referenced therein is not cured or (b) a consent agreement reasonably satisfactory to Mortgagee has not been entered into between Mortgagor and the EPA or the State agency in question.

Section 9. Remedies.

9.1 Statutory Provisions.

This Mortgage is upon the STATUTORY CONDITION, and upon the further condition that all covenants of Mortgagor contained in this Mortgage, in the Term Note, and/or in any of the other Security Documents shall be kept and performed, and for any breach of said STATUTORY CONDITION or upon the occurrence of an Event of Default, Mortgagee shall have the STATUTORY POWER OF SALE.

Said STATUTORY CONDITION and STATUTORY POWER OF SALE, as well as the MORTGAGE COVENANTS contained in the granting clause of this Mortgage, are those contained in the General Laws of the State of Rhode Island.

9.2 Rights Upon Default.

Upon the occurrence of any Event of Default, Mortgagee, in addition to the remedies provided above, shall have each and every of the following rights and remedies, all of which rights and remedies shall be cumulative and not exclusive and in addition to any and all other rights and/or remedies granted to Mortgagee under this Mortgage, the Note, or any of the other Security Documents or Other Documents:

9.2.1 Mortgagee shall have the right forthwith, at its election, to exercise any and all rights and remedies available to it at law or in equity.

9.2.2 Mortgagee shall have the right forthwith, at its election, and without further notice or demand (except as otherwise specifically provided in the Term Note, this Mortgage or the other Security Documents) and without the commencement of any action to foreclose this Mortgage or exercise any power of sale Mortgagee may have under this Mortgage, to enter immediately upon and take possession of the Mortgaged Property, or any part thereof, without further consent or assignment by Mortgagor, and to do, execute and perform any act, deed, matter or thing whatsoever that ought to be done, executed and performed in and about or with respect to the Mortgaged Property and the leasing, management, or operation thereof as fully as Mortgagor might do, including, without limitation, the right to institute summary proceedings against any Lessee who shall fail to comply with provisions of the applicable Lease, the right to lease the Mortgaged Property, or any part thereof, and to collect and receive all of the Rents, issues and profits, and all other amounts past due or to become due to Mortgagor by reason of its ownership of the Mortgaged Property and to apply the same, after the payment of all necessary charges and expenses in connection with the operation of the Mortgaged Property (including,

without limitation, any reasonable managing agent's commission, at the option of Mortgagee), on account of the Obligations. If Mortgagor or any other Person claiming by, through or under it, (other than any Lessee whose tenancy Mortgagee has agreed not to disturb or whose tenancy Mortgagee, in its sole and uncontrolled discretion, is willing not to disturb) are occupying all or any part of the Mortgaged Property, it is hereby agreed that Mortgagor and such other Persons shall either immediately surrender possession of the Mortgaged Property to Mortgagee and vacate the premises so occupied or pay a reasonable rental for the use thereof, monthly in advance, to Mortgagee.

9.2.3 Mortgagee shall have the right to seek the immediate appointment by any court of competent jurisdiction of a receiver for the Mortgaged Property and the business of Mortgagor in connection therewith and of the Rents and profits arising therefrom, which receiver shall be entitled to immediate possession of the entire Mortgaged Property, whether or not occupied by Mortgagor. Mortgagee shall be entitled to the appointment of such a receiver as a matter of right without consideration of the value of the Mortgaged Property or other security for the Obligations or the solvency of any Person liable for the payment thereof. If Mortgagor is then in possession of the Mortgaged Property or any part thereof, Mortgagor shall immediately, upon the appointment of such receiver, vacate the Mortgaged Property or such part thereof, as the case may be, or pay a reasonable rental for the use thereof during such receivership, the amount of such rental to be agreed upon between said receiver and Mortgagor or to be fixed by the court in which said receiver shall have been appointed; and the relationship between said receiver and Mortgagor shall be that of landlord and tenant.

9.3 Mortgagee's Right to Release and Negotiate.

Without affecting the liability of Mortgagor or any Other Liable Party (except any Person expressly released in writing), and without affecting any lien or other security not expressly released in writing, Mortgagee, at any time and from time to time, either before or after maturity of the Note, irrespective of whether any Default Condition then exists and without notice or consent, may do any one or more of the following:

(a) release any Person liable for payment of or performance of any or all of the Obligations;

(b) make any agreement extending the time, or otherwise altering the terms of payment of the Obligations or any part thereof, or modifying or waiving any of the Obligations, or subordinating, modifying or otherwise dealing with the lien or liens securing payment of the Obligations;

(c) exercise or refrain from exercising or waive any right Mortgagee may have;

(d) accept additional security of any kind;

(e) release or otherwise deal with any property, real or personal, securing the Obligations or any part thereof, including all or any part of the Mortgaged Property; and

(f) (in the event of any conveyance of Mortgagor's interest in the Mortgaged Property to parties not appearing in this instrument), deal with such successor or successors in interest with reference to this Mortgage and the Obligations secured hereby, either by way of forbearance on the part of Mortgagee or extension of the time of payment of the Note or any other sum forming part of the Obligations, or otherwise, without in any way modifying or affecting the conveyance under this Mortgage or the original liability of Mortgagor for the Obligations either in whole or in part. Nothing in this §9.3, however, shall be deemed a consent by Mortgagee to the conveyance by Mortgagor of any interest in the Mortgaged Property.

9.4 Mortgagor to Surrender Possession.

In the event of any sale of the Mortgaged Property under the provisions of this Mortgage, Mortgagor shall forthwith surrender possession of the Mortgaged Property to the purchaser. Upon failure to do so, Mortgagor shall thereupon be a tenant at sufferance of such purchaser, and upon its failure to surrender possession of the Mortgaged Property upon demand such purchaser, his heirs, legal representatives, successors or assigns, shall be entitled to institute and maintain an appropriate action for possession of the Mortgaged Property.

9.5 Uniform Commercial Code

Upon the occurrence of any Event of Default, Mortgagee shall have and may exercise all of the rights and remedies of a secured party under the Uniform Commercial Code then in effect in the state in which the Premises is located. Without limiting the generality of the foregoing:

(a) Mortgagee, at its option pursuant to the provisions of Section 9-501(4) of the Uniform Commercial Code, may proceed as to both the real and personal property covered by this Mortgage in accordance with its rights and remedies in respect of said real property, in which event (I) the other provisions of the Uniform Commercial Code shall not apply to disposition of the Collateral and (ii) the sale of the Collateral in conjunction with and as one parcel with said real estate shall be deemed to be a commercially reasonable manner of sale; or

(b) Mortgagee, at its option, may proceed as to the Collateral separately from said real property, in which event the requirement of reasonable notice shall be met by mailing notice of the sale, postage prepaid to Mortgagor or any other Person entitled thereto at least ten (10) days before the time of the sale or other disposition of any of the Collateral.

Section 10. Miscellaneous

10.1 Any notice, demand, request, instruction, document, or other communication to be given under or in connection with this Mortgage shall be in writing and hand-delivered return-

receipt requested or sent by registered or certified mail, postage prepaid, return-receipt requested, or sent by Federal Express or other overnight commercial courier service, addressed as follows:

If to Mortgagee: addressed to it at Mortgagee's address set forth in the opening paragraph of this Mortgage.

If to Mortgagor: addressed to it at Mortgagor's address set forth in the opening paragraph of this Mortgage.

Any party may change the address to which notices are to be sent to it by giving written notice of such change of address to the other party in the manner herein provided for giving notice, any such notice, demand, request, or other communication shall be deemed given when mailed in the manner required by this § 10.1.

10.2 The captions in this Mortgage are for convenience and reference only and do not define, limit headings or describe the scope of the provisions hereof.

10.3 The provisions of this Mortgage may be modified or terminated only by written instrument signed by Mortgagor and Mortgagee.

10.4 Mortgagee shall not be deemed to have waived or amended any of its rights or remedies under any of the Loan Documents unless such waiver or amendment be in writing and signed by it. No delay or omission on the part of Mortgagee in exercising any such right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not be construed as a bar to or a waiver of the same right or remedy on any future occasion. Without limiting the generality of the foregoing, the acceptance by Mortgagee of any sum after the occurrence of any Event of Default shall not constitute a waiver of the right to require prompt performance of all of the covenants and conditions, contained in the Loan Documents. The acceptance by Mortgagee of any sum less than the sum then due shall be deemed an acceptance on account only and shall not constitute a waiver of the obligation of Mortgagor to pay the entire sum then due, and Mortgagor's failure to pay said entire sum due shall be and continue to be an Event of Default notwithstanding such acceptance of such lesser amount on account, and Mortgagee shall be entitled at all times thereafter to exercise all rights and remedies conferred upon it following an Event of Default, notwithstanding the acceptance by Mortgagee thereafter of future sums on account.

10.5 The rights and remedies provided Mortgagee in the Loan Documents and any of them, or otherwise available by law, shall be cumulative and may be exercised concurrently and successively. Any one or more of such rights or remedies may be exercised by Mortgagee, at its option, without regard to the adequacy of its security.

10.6 Mortgagor and Mortgagee do not intend the benefits of any one or more of the Loan Documents to inure to, or otherwise exist for, the benefit of any third party who has a contractual

relationship with Mortgagor, who is a creditor of Mortgagor with respect to the Mortgaged Property, or any part thereof, or who otherwise succeeds to Mortgagor's interest or rights, and none of the Loan Documents shall be construed to make or render Mortgagee liable to any materialman, supplier, contractor, subcontractor, successor in title to the Mortgaged Property, or any part thereof or any Lessee, or for debts or claims accruing to any such Persons against Mortgagor. Notwithstanding anything contained in any of the Loan Documents, or any conduct or course of conduct by Mortgagor or Mortgagee or both, whether before or after signing this Mortgage, none of the Loan Documents shall be construed as creating any right, claim or cause of action against Mortgagee, or any of its officers, directors, agents, or employees, in favor of any materialman, supplier, contractor, subcontractor, successor in title to the Mortgaged Property, or any part thereof, or any Lessee or to any other Person other than Mortgagor.

10.7 Mortgagee may assign, negotiate, or pledge all or any portion of its rights under the Loan Documents or any of them, and, in case of such assignment, Mortgagor shall accord full recognition to such assignment. Without limiting the generality of the foregoing, Mortgagee shall have the right to sell or otherwise grant participations in the Loan to one or more of the participating financial institutions and to disclose all information in its possession with respect to Mortgagor and the Mortgaged Property to such institutions; Mortgagor shall cooperate with Mortgagee, if requested by Mortgagee, with respect to any of Mortgagee's efforts to obtain such participants.

10.8 The Loan Documents reflect the entire agreement between Mortgagor and Mortgagee.

10.9 Every word herein purported to the neuter gender only shall extend to and include males and females and every word herein importing the singular number only shall be construed to extend to and include the plural number also.

10.10 In the event any term or provision of this Mortgage or the application thereof to any Person or circumstances shall, to any extent, be held invalid or unenforceable, the remainder of this Mortgage or the application of such term or provision to Persons or circumstances other than those to which it is held invalid or unenforceable, shall be valid and enforceable to the fullest extent permitted by law.

10.11 This Mortgage shall be construed in accordance with and governed by the laws of the State of Rhode Island, without resort to that state's conflict of laws rules.

10.12 All obligations of Mortgagor under this Mortgage are the joint and several obligations of each and every Mortgagor named herein; and all references to Mortgagor herein shall be deemed to refer to each of them, any of them and all of them.

10.13 All Exhibits referred to in this Mortgage are by such references fully incorporated herein.

10.14 This Mortgage shall inure to the benefits of and be binding on the successors and assigns of Mortgagee and the heirs, legal representatives, successors and assigns of Mortgagor; provided however § 10.14 shall not be construed to allow any assignment by Mortgagor in violation of the terms of this Mortgage.

10.15 Mortgagor hereby grants to Mortgagee a lien, security interest and right of setoff as security for all liabilities and obligations to Mortgagee, whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Mortgagee or any entity under the control of Mortgagee, or in transit to any of them. At any time following the occurrence of an Event of Default hereunder, without demand or notice, Mortgagee may set off the same or any part thereof and apply the same to any liability or obligation of Mortgagor even though unmatured and regardless of the adequacy of any other collateral securing the Loan. ANY AND ALL RIGHTS TO REQUIRE MORTGAGEE TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOANS, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF MORTGAGOR OR ANY GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

10.16 Jurisdiction. etc. MORTGAGOR HEREBY IRREVOCABLY AND UNCONDITIONALLY (A) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF RHODE ISLAND OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT, AND (B) WAIVES ANY AND ALL PERSONAL RIGHTS UNDER THE LAWS OF ANY STATE TO OBJECT TO JURISDICTION WITHIN THE STATE OF RHODE ISLAND OR VENUE IN ANY PARTICULAR FORUM WITHIN THE STATE OF RHODE ISLAND. NOTHING CONTAINED HEREIN, HOWEVER, SHALL PREVENT MORTGAGEE FROM BRINGING ANY SUIT, ACTION OR PROCEEDING OR EXERCISING ANY RIGHTS AGAINST ANY SECURITY AND AGAINST MORTGAGOR, AND AGAINST ANY PROPERTY OF MORTGAGOR, IN ANY OTHER STATE. INITIATING SUCH SUIT, ACTION OR PROCEEDING OR TAKING SUCH ACTION IN ANY STATE SHALL IN *NO* EVENT CONSTITUTE A WAIVER OF THE AGREEMENT CONTAINED HEREIN THAT THE LAWS OF THE STATE OF RHODE ISLAND SHALL GOVERN THE RIGHTS AND OBLIGATIONS OF EACH OF MORTGAGOR AND MORTGAGEE HEREUNDER OR THE SUBMISSION HEREIN MADE BY MORTGAGOR TO PERSONAL JURISDICTION WITHIN THE STATE OF RHODE ISLAND.

10. 17 Waiver of Jury Trial. MORTGAGOR AND MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED ON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OF THE LOAN DOCUMENTS OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.

THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOANS.

10.18 Registered Agent for Service of Process. For such time as any of the Obligations shall be outstanding, Mortgagor irrevocably designates the Registered Agent as its registered agent for service of process in the State of Rhode Island and, in the absence thereof, the Secretary of State of the State of Rhode Island as its agent to accept and acknowledge on its behalf service of any and all process in any such suit, action or proceeding brought in any such court and agrees and consents that any such service of process upon the Registered Agent and written notice of such service to Mortgagor by registered or certified mail shall be taken and held to be valid personal service upon such Mortgagor regardless of where such Mortgagor shall then be living or doing business and that any such service of process shall be of the same force and validity as if service were made upon such Mortgagor according to the laws governing the validity and requirements of such service in each such state and waives any claim of lack of personal service or other procedural error by reason of any such service. Any notice, process, pleadings or other papers served upon the Registered Agent or, in its absence, the State of Rhode Island Secretary of State shall, within three (3) Business Days after such service, be sent by certified or registered mail to Mortgagor at its address set forth in this Agreement and to the Registered Agent (or, if applicable, the Secretary of State of the State) for service.

10.19 Any capitalized term used, but not otherwise defined in, this Mortgage shall have the meaning assigned to such term in the Term Loan Agreement.

IN WITNESS WHEREOF, Mortgagor has executed or caused this Mortgage to be executed under seal, on the date first written above.

ELEGANT HOMES, LLC

By: [signature], Member
Tarek Wehbe, Member

By: [signature], member
Harry Zervas, Member

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Pawtucket on the 15th day of November, 2005, before me personally appeared the above named Tarek Wehbe and Harry Zervas, Members of Elegant Homes, LLC, to me known and known by me to be the parties executing the foregoing instrument for and in behalf of Elegant Homes, LLC, and they acknowledged said instrument, by them executed to be their free act and deed in his capacity as aforesaid and the free act and deed of Elegant Homes, LLC.

[signature]
Notary Public: Charles H. White
My commission expires: 06/27/09

15n09mtg.ele

EXHIBIT 'A'

**PERMITTED ENCUMBRANCES**

1. Taxes and assessments not yet due and payable.

EXHIBIT "A"

Two certain tracts or parcels of land, located in the rear of the Comstock Farm, in the Town of Lincoln, County of Providence, State of Rhode Island, and bounded and described as follows:

The first lot begins at the north-west corner of said lot, at a stone: a bound of land formerly owned by Mary Burgess, wife of Tristam Burgess; thence running S. 84 ½° E. and bounded northerly by land now or formerly of the Estate of Anthony Angell, thirty-six (36) rods, and twenty-two (22) links, to an old chestnut stump; thence running S. 86° E. with said Angell land, four (4) rods, and eight (8) links, to a stone set in the ground; thence running S. 2° W., two (2) rods, to a corner of land formerly belonging to the Heirs of Joseph Whipple; thence running S. 16 ½° E., bounded easterly by said Whipple land, fourteen (14) rods, and five (5) links, to a corner of land formerly belonging to the Heirs of Nathaniel Angell; thence running S. 64° W., with said Angell land, to a stone bound at the corner of the above named Burgess land; thence running N. 20° W., bounded westerly by said Burgess land, about thirty-seven (37) rods to the point of beginning, and contains about five and ¾ (5-3/4) acres of land.

The second lot begins at a stone set in the ground at the south-west corner of the first tract hereinbefore described; thence running S. 64° W., twenty-two (22) rods, and ten (10) links, to stake and stones; thence running westerly about five hundred ninety (590) feet to a stone at the south-west corner of this lot; thence running N. 4° E., twenty-one (21) rods and twenty-six (26) links, to a stone; thence running N. 36° E., nine and ½ (9-1/2) rods to a stone; thence running N. 4° E., three (3) and ten (10) links, to a stone at the north-west corner of said lot; thence running S. 84° E., thirty-six (36) rods to a stone at the north-west corner of the first tract hereinbefore described; thence running southerly bounded easterly by said first tract, about thirty-seven (37) rods to the point of beginning, and contains about twelve and ¼ (12-1/4) Acres of land.

Also, a certain triangular tract of land, lying westerly from the Louisquisset Pike in the Town of Lincoln, County of Providence, in the State of Rhode Island, and is bounded and described as follows:

Beginning at the northeasterly corner of the within described land at a stone, and being a corner of land now or lately of Anna B. Comstock and land now or formerly of Jennie Cimini; thence S. 65° E. bounding northeasterly by land now or lately of Anna B. Comstock and land now or lately of Jennie Cimini, five hundred and thirty-two (532) feet to an iron pope in the ground; thence N. 88° W. bounding southerly by land now or lately of Jennie Cimini four hundred and thirty eight (438) feet to an iron pope set in the ground at the southeasterly corner of land now or lately of Jennie Cimini; thence N. 12° E. two hundred and thirty (230) feet to the place of beginning and containing 1.13 acres, more or less.

Excluding from the above parcels the premises conveyed by Albina Lems to Daniel J. Sullivan Jr. and Kathleen M. Sullivan by deed dated September 15, 1993 and recorded in Book 386 at Page 83.

Said parcels are further identified as Assessors Plat 42 Lot 10 for the Town of Lincoln, R.I.

PROPERTY ADDRESS:
15 Dennell Drive
Lincoln, RI 02865

LINCOLN, RI
KAREN D. ALLEN
TOWN CLERK

2005 NOV 15 A 9:07