UNITED STATE DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. CA NO: 08-00125 ML-LDA

REAL PROPERTY LOCATED AT
1630 MINERAL SPRING AVENUE, ET AL
(INCLUDING REAL PROPERTY LOCATED AT
6 PINE TREE LANE, LINCOLN, RHODE ISLAND)

**Verified Claim**
**Affidavit of Honda Lease Trust**

The undersigned being duly sworn under oath deposes and says:

1. That he is Customer Account Supervisor of the Movant, Honda Lease Trust (the "Movant").

2. That he is authorized to make this affidavit and makes this affidavit based on personal knowledge, cognizant of the facts constituting this cause of action, and familiar with the books and business of plaintiff.

3. On or about January 14, 2008, Mathilda and Tarek W. Wehbe, (hereinafter, "Wehbe") entered into a Lease Agreement with Majestic Motors Inc. of Lincoln, RI (hereinafter the "Agreement") for the lease of a 2008 Honda Pilot, VIN # 5FNYF18708B027222 (hereinafter the "Automobile") listed in the Agreement. A copy of the Agreement is attached hereto and is incorporated herein by reference. See Exhibit A, being a true and accurate copy thereof extracted from the books of original entry and/or other written memoranda. The Lease was duly assigned to Movant who remains the owner of record of the Automobile. See Exhibit B.

4. That the lease payments due for the Automobile did in fact become and are now delinquent and have been past due for more than 100 days.

5. That a family member of Wehbe contacted Movant and advised that the 1) Automobile is currently located in the garage located at 6 Pine Tree Lane, Lincoln, Rhode Island, a property subject to the above captioned matter, and 2) Wehbe had left the country and had no intentions of returning.

6. Wehbe does not own the Automobile and has no defenses to repossession.

7. That Plaintiff has made no claim the Automobile and as the rightful owner of the Automobile, Movant is entitled to immediate possession.

8. The Movant has mailed notice as required by RIGL §6-51-3 prior to recovery of possession but has been unable to gain access to the premises. See Exhibit C.

9. Movant's efforts to recover the Automobile have been thwarted by this action.

10. That the Automobile is rapidly depreciating and Movant has been unable to gain access to the premises to recover the Automobile which is now under the control of the United States Marshal Service.

11. Immediate return of the Automobile to the Movant party will prevent further deterioration and wear and tear of the Automobile and will prevent unjust enrichment.

12. All of the above paragraphs are hereby verified to be true and accurate.

Honda Lease Trust

By: Christopher Pooler
Its: Customer Account Supervisor

State of Massachusetts
County of Hampden

Subscribed and sworn to before me this 23rd day of July, 2008.

Notary Public
My commission expires: 3/31/11

MONIKA LISEK
Notary Public
Commonwealth of Massachusetts
My Commission Expires
March 31, 2011

EXHIBIT A

Leadership Leasing 10406123 (H)

Lease Date: 01/14/2008

# Closed-End Vehicle Lease Agreement

| LESSEE(S) (Print Name & Address) | VEHICLE GARAGING ADDRESS (if different) | LESSOR (Dealer) |
|---|---|---|
| Name of Lessee: MATHILDA WEHBE | Name of Driver: | Name of Lessor: MAJESTIC MOTORS INC. |
| Street Address: 6 PINE TREE LANE | Street Address: | Street Address: 1300 EDDIE DOWLING HWY |
| City: LINCOLN | City: | City: LINCOLN |
| State, Zip: RI 02865 | State, Zip: | State, Zip: RI 02865 |
| County: | County: | Dealer Number: 206748 |
| Name of Co-Lessee: TAREK W WEHBE | Driver Phone Number: (401)305-3633 | |

By signing this Lease, Lessee(s) ("I", "my", "me") agree to lease the Vehicle, described below, according to the terms on both sides of this Lease. I accept delivery of the Vehicle and acknowledge that it is in good operating order, equipped as described and has the odometer reading recorded below. "Lessor" refers to the Lessor ("Dealer") named above and Assignee. American Honda Finance Corporation (AHFC) will administer this Lease.

**Assignee:** HONDA LEASE TRUST **LEASE TERM:** 36 **MONTHS.**

## VEHICLE DESCRIPTION

| New/Used | Year/Make/Model | Body Style | Vehicle Identification Number | Odometer Reading | Primary Use: |
|---|---|---|---|---|---|
| N | 2008 HONDA PILOT | 5 DR 4W | 5FNYF18708B027222 | 22 | ☐ Personal, Family, or Household<br>☒ Business, Commercial, Agricultural, or Lessee is an organization or governmental entity |

**Including Standard Manufacturer Installed Features (unless replaced by upgraded equipment) and the Following Dealer Installed Options:**

___ Air Conditioning ___ Leather Interior ___ Power Moonroof ___ Custom Wheels ___ Rear Wing Spoiler ___ Alarm System

Audio System Includes: ___ AM/FM Stereo ___ AM/FM Stereo with Cassette Player ___ Cassette Player ___ CD Changer ___ CD Player

Other Dealer Installed Options: ______

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

| AMOUNT DUE AT LEASE SIGNING (Itemized Below)* | MONTHLY PAYMENTS/SINGLE PAYMENT | OTHER CHARGES (not part of my monthly payment) | TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease.) |
|---|---|---|---|
| $ 1000.00 | My first monthly payment of $ 439.49 is due on 01/14/2008, followed by 35 payments of $ 439.49 due on the 14th of each month. The total of my monthly payments is $ 15821.64. My single payment of $ N/A is due on N/A. | Disposition Fee (if I do not purchase the Vehicle)...$ 0<br>Total...$ 0 | $ 16382.15 |

## *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING

**Amount Due at Lease Signing**

| | | |
|---|---|---|
| Capitalized Cost Reduction (Amount Paid in Cash) | $ | 308.84 |
| Sales/Use Tax on Amount Paid in Cash | + | 21.62 |
| Capitalized Cost Reduction (Credit for Net Trade-in Allowance) | + | N/A |
| Sales/Use Tax on Credit for Net Trade-in Allowance | + | N/A |
| Advance Monthly Payment (1st Month) | + | 439.49 |
| Advance Single Payment (if Single Payment Lease) | + | N/A |
| Refundable Security Deposit | + | N/A |
| Initial Title Fees | + | N/A |
| Initial Registration Fees | + | 100.00 |
| Other: N/A | + | N/A |
| Other: DOC FEE | + | 115.00 |
| Other: ST UPFRONT TAX | + | 15.05 |
| **TOTAL** | = $ | 1000.00 |

**How the Amount Due at Lease Signing will be Paid**

| | | |
|---|---|---|
| Credit for Net Trade-in Allowance Year ___ Make ___ | $ | N/A |
| Rebates: N/A | + | N/A |
| Noncash Credits: | + | N/A |
| Amount Paid By: N/A | + | N/A |
| Amount to be Paid in Cash: | + | 1000.00 |
| **TOTAL** | $ | 1000.00 |

RECEIVED

JAN 17 2008

NORTHEAST REGION

## MY MONTHLY PAYMENT/SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW:

| | | | |
|---|---|---|---|
| GROSS CAPITALIZED COST | $ | 33045.00 | ☐ Please check this box for an itemization of Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 32450.00) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance). |
| CAPITALIZED COST REDUCTION | − | 308.84 | The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the gross capitalized cost. |
| ADJUSTED CAPITALIZED COST | = | 32736.16 | The amount used in calculating my base monthly or single payment. |
| RESIDUAL VALUE | − | 18502.80 | The estimated value of the Vehicle at the scheduled end of the Lease Term used in calculating my base monthly or single payment. |
| DEPRECIATION AND ANY AMORTIZED AMOUNTS | = | 14233.36 | The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. |
| RENT CHARGE | + | 553.32 | The amount charged in addition to the depreciation and any amortized amounts. |
| TOTAL OF BASE PAYMENT(S) | = | 14786.68 | The depreciation and any amortized amounts plus the rent charge. |
| LEASE PAYMENTS | ÷ | 36 | The number of payments required during the term of my Lease. |

BASE MONTHLY/SINGLE PAYMENT 410.74
MONTHLY SALES/USE TAX + 28.75
SALES/USE TAX (SINGLE PAYMENT) + N/A
OTHER: ______ + N/A
**TOTAL MONTHLY/SINGLE PAYMENT = $ 439.49**

**EARLY TERMINATION. I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.**

**EXCESSIVE WEAR AND USE.** I may be charged for excessive wear based on Lessor's standards for normal use and for mileage in excess of 12000 miles per year at the rate of 20 cents per mile.

**PURCHASE OPTION AT END OF LEASE TERM.** I have an option to purchase the Vehicle AS-IS, WHERE-IS at the end of the Lease Term for $ 18502.80, plus any required taxes and fees.

**OTHER IMPORTANT TERMS.** Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

## PAYMENT SCHEDULE

I agree to make payments to Lessor according to the schedule shown above. The first payment is due on the Lease Date. The second payment is due no later than **34** days after the Lease Date and must be on or between the **1st** and **28th** of the month. If the total monthly payment includes sales or use tax, this payment amount may vary to the extent of any tax increase or decrease. I will not change or stop any Lease payments for any reason, even if the Vehicle is stolen, destroyed, seized by a governmental authority or experiences mechanical problems.

## LATE CHARGE / RETURNED CHECK CHARGE

I will pay a late charge equal to the lesser of **$25** or **5%** of the unpaid portion on any payment that is not received within **10** days after it is due, or such lesser amount as set by law. I will also pay a **$20** charge for any check or similar instrument returned for any reason.

## VEHICLE WARRANTIES

If the Vehicle is new, it is covered by the Manufacturer's New Vehicle Warranty. If the Vehicle is new or used, it is not covered by any other warranty unless identified below:

_____ Remainder of Manufacturer's New Vehicle Warranty.
_____ Manufacturer's Used Vehicle Limited Warranty.
_____ Manufacturer's Extended Warranty.
_____ Other: ______

Lessor assigns to me all of its rights in the above specified warranties. LESSOR LEASES THE VEHICLE "AS-IS" AND MAKES NO WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE VEHICLE AND SPECIFICALLY DISCLAIMS ANY WARRANTIES IMPLIED BY LAW, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE ARE NOT DISCLAIMED IN THE STATES OF MASSACHUSETTS, MISSISSIPPI AND VERMONT.

## OPTIONAL SERVICE CONTRACT

An optional service contract promises to perform services or provide benefits relating to the maintenance or repair of the Vehicle. These coverages are not provided by the Lessor. I must pursue all matters relating to these coverages through the provider. The terms and conditions for these coverages are in a separate contract, which I have read and received.

Price: $ N/A Provider: N/A

Price: $ N/A Provider: N/A

If the price of any service contract is not included in the amount due at lease signing, the price will be included in the Gross Capitalized Cost and will be subject to rent charges.

## OTHER CHARGES

I understand that the "Other Charges" and "Total of Payments" boxes above do not reflect amounts collected on behalf of third parties (such as property taxes, fines, fees, etc.) or charges imposed if I fail to abide by or modify the terms of this Lease. I am also responsible for these amounts and will refer to all other terms and conditions of this Lease for a description of all charges due.

## ESTIMATED FEES AND TAXES DURING LEASE TERM

I agree to pay when due or reimburse Lessor for all title/license/registration/official fees and taxes over the term of my Lease (including any extensions), whether paid at lease signing, included in my monthly payments or assessed otherwise. Lessor estimates this amount to be: $ 3371.67

The actual total of fees and taxes may be higher, or lower, depending upon whether the garaging address of the Vehicle changes, and on the tax rates in effect, or the value of the Vehicle at the time a fee or tax is assessed. Some taxes and fees may come due after the Lease terminates. I agree to pay any such amounts within **10** days of being invoiced. I will be responsible for any fines or penalties if I fail to pay the bill when due.

## VEHICLE INSURANCE

I will pay for and maintain during the Lease term, and until the Vehicle is returned to Lessor, insurance on the Vehicle which has the following minimum coverages: (1) Public Liability Insurance that either covers up to **$100,000** for bodily injuries to any one person, **$300,000** for bodily injuries for any one accident, and **$50,000** for property damage, **or** has a combined single limit of **$300,000** for bodily injuries and property damage for any one accident; **and** (2) Physical Damage Insurance covering loss or damage to the Vehicle, with deductibles of no more than **$1,000** for collision and upset loss and **$1,000** for comprehensive fire and theft loss.

The Policy of Public Liability Insurance must show Assignee as an additional insured. The policy of Physical Damage Insurance must show Assignee as loss payee. I may choose to get the required coverages myself or through any person. The policies must be written by an insurance company acceptable to Lessor. I agree to provide written proof of insurance to Lessor upon request, and authorize Lessor, and its agents, to contact my insurance agent and insurance company to verify coverage as required by this Lease. I further authorize Lessor to endorse my name(s) on any check or draft from my insurance company for any claim. Lessor may change the amounts of required insurance. I acknowledge that the limits required under this Lease may not be sufficient for my needs, and will see my insurance agent for more information.

All insurance related information must be addressed to the Assignee, c/o PDP Services, P.O. Box 650201, Hunt Valley, Maryland 21065-0201.

Insurance Company Name: NATIONWIDE — Policy Number: 5138D936320

Agent Name: ANN M HORTON — Agent Telephone: (401)353-4447

Agent Address: 1804 Mineral Spring Ave — City: North Providence — State: RI — Zip Code: 02904

**NOTICES TO LESSEE(S): (1) CAUTION — IT IS IMPORTANT THAT I THOROUGHLY READ THIS AGREEMENT BEFORE I SIGN IT. (2) I WILL NOT SIGN THIS AGREEMENT BEFORE I READ BOTH SIDES OF IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (3) I AM ENTITLED TO AN EXACT COPY OF THE LEASE I SIGN. I WILL KEEP IT TO PROTECT MY LEGAL RIGHTS. BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ BOTH SIDES AND RECEIVED A COMPLETED COPY OF THIS LEASE AGREEMENT.**

LESSEE: (x) Mathilda Wehbe BY: ______ TITLE: ______

LESSEE: (x) [signature] BY: ______ TITLE: ______

**GUARANTY:** I/We jointly and severally guaranty payment of all amounts owed under this Lease. This means that if the Lessee(s) fails to pay any money owed, I/We will pay it. Upon default under the Lease, Lessor may proceed immediately against me/us for payment, without first proceeding against the Lessee(s), any other guarantor, or any security. I/We also agree to be liable for all fees, including attorneys' fees, that the Lessor incurs in enforcing this Lease or guaranty. My/Our guaranty of payment is unconditional, and will not be affected by any settlement, extension, renewal or amendment of the Lease, or the release of any person or security. I/We waive all notices of every kind and nature and also waive all rights to demand and presentment.

Co-Signer/Guarantor Signature — Print Name — Co-Signer/Guarantor Signature — Print Name

Lessor accepts this Lease and assigns all right, title, and interest in this Lease and the Vehicle described herein, and Lessor's rights under any guaranty executed in connection with the

## VEHICLE MAINTENANCE AND USE

**VEHICLE MAINTENANCE AND OPERATING COSTS:** I will maintain the Vehicle in good working order and condition and have all necessary repairs made, using genuine manufacturer's replacement parts. I will pay all expenses for Vehicle use and operation, including maintenance, repair, fluids, tires and other expenses. At my expense, I will have the Vehicle serviced in accordance with the manufacturer's minimum recommendations and as requested by the manufacturer in connection with any recall campaign, have the service validated, and be able to provide proof that such service has been performed. Lessor may inspect the Vehicle at any reasonable time.

**USE:** I will notify my insurance company and AHFC immediately of any damage to or loss of the Vehicle, and will cooperate following any such incident. I will not: (a) allow unlicensed drivers to operate the Vehicle; (b) use or allow the Vehicle to be used illegally, improperly, or to transport goods or people[illegible] pay; (c) use the Vehicle in a way that causes cancellation or suspension insurance or causes the manufacturer's warranty to become void; (d) u[illegible] the Vehicle to pull trailers that exceed the manufacturer's trailer towi[illegible] recommendations; (e) remove the Vehicle from the 48 contiguous United Stat[illegible] without Lessor's written consent (unless the Vehicle was originally leased Alaska or Hawaii); or (f) change, mark or install equipment in the Vehicle witho[illegible] Lessor's written consent.

**REGISTRATION:** I will register the Vehicle, as required in the state whe[illegible] the Vehicle is garaged and pay for all license, title and registration costs. I[illegible] move or change the Vehicle's garaging address, I will notify AHFC immediate[illegible] and pay for all resulting taxes and title, registration or other fees.

## ENDING MY LEASE

**PURCHASE OPTION PRIOR TO THE END OF LEASE TERM:** I have the option to purchase the Vehicle **AS IS, WHERE IS** at any time (unless a governmental agency has seized the Vehicle and instructed Lessor not to release the Vehicle to me). This purchase option may be exercised only by the Lessee. If I purchase the Vehicle prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (defined below), plus (i) any payments or other charges due and unpaid under this Lease (except excess mileage and excessive wear and use charges) and (ii) any taxes or fees required by law in connection with the purchase. The Adjusted Lease Balance is the unamortized portion of the Adjusted Capitalized Cost, determined on an Actuarial basis, where earnings are accrued on the first day of every period. Lessor will provide a written explanation of the Actuarial method used to determine the Adjusted Lease Balance upon request. I will re-register and re-title the Vehicle in my name at the time I purchase it. If I fail to do so, Lessor may cancel the registration.

**NOTICE:** If I exercise the Purchase Option under this Lease, I acknowledge that AHFC, on behalf of Assignee, does hereby transfer, set over and assign all of its rights (but not its obligations) to sell such Vehicle to Honda Finance Exchange, Inc. pursuant to the Sub-Servicing and Master Exchange Agreement between AHFC and Honda Finance Exchange, Inc. **Notice is hereby given that all of the rights (but not the obligations) to sell the Vehicle have been assigned to Honda Finance Exchange, Inc. pursuant to such Master Exchange Agreement.**

**EARLY TERMINATION LEASE LIABILITY:** If I am not in default, I may terminate this Lease early. If I decide to terminate this Lease early, I will return the Vehicle to Lessor on the due date of a monthly lease payment. I will owe Lessor (a) any monthly payments already due and unpaid and any other amounts owed arising from my failure to keep promises under this Lease; plus (b) any official fees and taxes imposed in connection with the termination; plus (c) the amount, if any, by which the then Adjusted Lease Balance (determined as described above) exceeds the Realized Value of the Vehicle (described in the section below). Lessor may terminate this Lease at any time if the Lease is in default, in which case, in addition to the foregoing amounts, I also agree to pay Lessor's costs of repossessing, storing and transporting the Vehicle as well as Lessor's costs of collection, including court costs and reasonable attorneys' fees, to the extent permitted by law.

**DETERMINATION OF REALIZED VALUE OF THE VEHICLE:** The Realized Value of the Vehicle upon early termination will be determined in one of the following ways: (a) by written agreement between Lessor and me, provided it is signed within **10** days after I return the Vehicle to Lessor; (b) by a professional appraisal of the wholesale value of the Vehicle, if I choose to obtain one at my sole expense within **10** days after returning the Vehicle to Lessor. The appraisal must be made by an independent third party who is acceptable to Lessor and to me; the appraised value will then be the Realized Value; or (c) if the Realized Value is not determined by (a) or (b) above within **10** days after I return the Vehicle to Lessor, Lessor will proceed to sell the Vehicle at wholesale in a commercially reasonable manner. The net sale price, less any fees and taxes imposed upon Vehicle disposition, will be the Realized Value.

**IF THIS IS A SINGLE PAYMENT LEASE:** The Advance Single Payment amount is calculated based on the fact that I pay all periodic payments due under this Lease at its inception, and on the assumption that it will go full term. If the Lease is terminated early, the Lease will be treated as one which calls f[illegible] monthly payments, each in the amount of the Advance Single Payment divide[illegible] by the number of months in the Lease Term. Then my early termination liabili[illegible] will be calculated in the manner set forth under "Early Termination Lease Liability

**SCHEDULED END OF LEASE LIABILITY:** I agree that if I do n[illegible] purchase the Vehicle at the end of the Lease, my payment liability at that tim[illegible] will be the sum of: (a) any monthly lease payments already due and unpaid an[illegible] any other amounts arising from my failure to keep my promises under this Leas[illegible] plus (b) any Excessive Wear and Use amounts, defined below; plus (c) an[illegible] excess mileage charges; plus (d) any official fees and taxes imposed i[illegible] connection with Lease termination.

**EXCESSIVE WEAR AND USE/EXCESS MILEAGE:** If I do n[illegible] purchase the Vehicle at the end of my scheduled Lease term, and subject t[illegible] the limited waiver below, I will reimburse Lessor for the amount it would cos[illegible] Lessor to repair excessive wear and use to the Vehicle, whether or not Lesso[illegible] makes repairs. "Excessive Wear and Use" includes, but is not limited to: (a) an[illegible] mechanical defect or failure; (b) broken or missing parts or accessories (includin[illegible] missing keys or remote entry devices); (c) damaged body, fenders, metal wor[illegible] lights or trim, or damaged or broken glass; (d) paint which is chipped; (e) interio[illegible] rips, stains, burns, or excessively worn areas; (f) missing or unsafe wheels o[illegible] tires (including spare), tires with less than **1/8th** inch of tread remaining at th[illegible] shallowest point; (g) damage or any other condition that makes the Vehic[illegible] unsafe or unlawful to operate; or (h) safety and emission control equipment no[illegible] in proper working order. I also agree to pay for excess mileage as stated on th[illegible] other side under the paragraph entitled "Excessive Wear and Use".

**LIMITED EXCESSIVE WEAR AND USE WAIVER:** If I am i[illegible] compliance with all terms and conditions of this Lease at the scheduled Leas[illegible] end (including, without limitation, payment obligations and insuranc[illegible] requirements), Lessor agrees to waive Excessive Wear and Use Charges cause[illegible] by one or more single events, each of which total less than **$500** to repair, u[illegible] to a maximum of **$1500** waived. **I remain responsible for the cos[illegible] of any damage arising from any single event that would cos[illegible] $500 or more to repair, and for Excessive Wear and Use Charges exceeding $1500.** A "single event" is a single occurrence that results in damage to the Vehicle. A single occurrence may result in damage to multiple areas of the Vehicle (as in front and back, or both sides) but would be considered a single event for purposes of this Waiver.

**RETURN OF THE VEHICLE:** Whether the Lease is terminated early or as scheduled, I agree to return the Vehicle to the Dealer's address as shown on this Lease or to any address AHFC specifies. If I keep possession of the Vehicle past the Lease Term, I agree to continue Monthly Payments, but I understand that continued payment does not permit me to keep the Vehicle. I agree to pay for any damages that Lessor may suffer because I failed to return the Vehicle at Lease termination.

**ODOMETER DISCLOSURE STATEMENT:** On termination of this Lease (or upon election to purchase the Vehicle), I agree to provide a signed written disclosure to Lessor of the correct odometer mileage on the Vehicle, as required by federal law, and understand that the failure to do so may result in fines and/or imprisonment. I agree to pay Lessor for any loss, claims, damage, costs and expenses (including legal expenses) which result from my failure to

## DEFAULT OR LOSS OF THE VEHICLE

**DEFAULT:** I will be in default if: (a) I fail to make any payment when due under this Lease; (b) a bankruptcy petition is filed by or against me; (c) a proceeding in receivership is filed by or against me or my property, or I make an assignment for the benefit of creditors; (d) I fail to comply with the insurance requirements of this Lease; (e) I do not repair or maintain the Vehicle as the Lease requires; (f) the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use; (g) I fail to answer traffic summons or pay any traffic tickets or other fines when due; (h) the Vehicle becomes subject to a lien; (i) the Vehicle is seized or confiscated for any reason by a law enforcement agency; (j) I break any of my other agreements in the Lease and such breach significantly impairs the prospect of payment, performance, or realization of Lessor's interest in the Vehicle; or (k) I die. **Remedies:** In the event of default, Lessor may do any or all of the following without giving advance notice to me: (a) take any reasonable measures designed either to correct the default or to save Lessor from loss, in which case I will pay Lessor upon Lessor's request for the costs and expenses incurred; (b) terminate the Lease and my rights to possess and use the Vehicle; (c) take possession of the Vehicle by any method or manner permitted by law; (d) determine my termination liability on an early termination basis which I agree to pay immediately; (e) apply my security deposit to any amounts I owe; and (f) pursue any other remedy permitted by law. All of Lessor's rights are cumulative and the taking of any action will not prevent the taking of any other action. I also agree to pay Lessor for all collection and legal costs, including all reasonable attorneys' fees and court costs Lessor incurs, to the extent permitted by law.

**TOTAL LOSS PROTECTION:** Total Loss Protection limits the amount I will owe if the Vehicle is lost, stolen or destroyed. If the Vehicle is lost, stolen or destroyed and I have maintained the required insurance coverages and Lessor receives all insurance proceeds, Total Loss Protection will apply and I will only owe Lessor for: (i) past due monthly lease payments and other amounts incurred as of the date of the loss; (ii) the insurance deductible and any amounts deducted from the insurance settlement for other, prior damage, excessive wear, use and mileage; and (iii) applicable taxes and official fees. Lessor waives, **at no cost to me**, its right to collect any amount in excess of these amounts. I agree to consult with Lessor prior to accepting any actual cash value insurance settlement offered by my insurer and to provide Lessor with a copy of the insurer's settlement statement.

## ADDITIONAL INFORMATION

**OWNERSHIP: This is a lease agreement.** Lessor owns the Vehicle. I agree that this Lease is a true Lease for tax and other purposes and that Lessor will receive the benefits of ownership. Lessor has not given me any information or advice regarding any possible tax consequences or benefits under this Lease.

**REIMBURSEMENT AGREEMENT:** I understand and agree that I am responsible for promptly paying any fines incurred on the Vehicle, such as traffic or parking tickets, and that this liability is joint and several if this Lease is signed by more than one Lessee. I authorize Lessor to provide any information about me requested or required by a state parking or traffic authority in connection with any such parking or traffic ticket. If Lessor pays any repair bills, storage bills, taxes, fines, tickets or other charges on the Vehicle, I agree to repay the amount to Lessor immediately upon demand. If I do not pay, I will reimburse AHFC and pay a **$20** administrative fee, or other amount as allowed by law, for every such fine, ticket, penalty, or other charge paid on my behalf.

**LESSEE'S REPRESENTATIONS:** I promise that I have given true and correct information in the application for credit, and have no knowledge that would make that information untrue in the future. Lessor has relied on the truth and accuracy of that information in entering into this Lease. I promise that I have given a true payoff amount on any Vehicle traded in. If that payoff is more than the amount shown in the Itemization of Amount Due at Lease Signing on the front of this Lease, I will pay Lessor the excess amount upon demand.

**NOTICES/NO WAIVER:** I agree to notify Lessor within **30** days of any change in my address. Unless I notify Lessor in writing of any change in my address, any notices Lessor sends me are sufficient if sent to my address as shown on this Lease. Lessor can waive or delay the enforcement of its rights as to any person signing this Lease without affecting its rights as to any other person signing this Lease. I also agree that Lessor can release any signer from his or her obligations without releasing any other signer from their obligations.

**SECURITY DEPOSIT:** A refundable security deposit may be part of the payment I make when I sign this Lease. At lease termination, whether early or as scheduled, Lessor will deduct from the security deposit any amounts I owe under this Lease and do not pay. If I fully perform my obligations under this Lease, upon termination any part of the security deposit not credited will be refunded to me. In the event Lessor has not been billed for personal property taxes for the Vehicle for the year (or part thereof) in which the Lease terminates, I authorize Lessor to retain a portion of the security deposit estimated to cover any personal property tax allocation for such year and apply it to the tax when due. No interest, increase or profits will accrue or be paid to me on the security deposit.

**SECURITY INTEREST:** Further, I authorize AHFC, on my behalf, to settle or release any claim under the insurance related to Lessor's ownership of the Vehicle, to receive and endorse any checks or drafts representing premium rebates and/or proceeds of such insurance, and to apply such amounts to my obligations under this Lease. AHFC may make and receive claims for all proceeds paid or payable under any service contract purchased under this Lease for application to my obligations under this Lease. In the event I am in default under this Lease, AHFC may cancel any service contracts and receive any funds paid or payable as a rebate, refund, return or otherwise.

**ASSIGNMENT: I agree not to transfer, sublease, rent, or assign this Lease, the Vehicle, or my right to use the Vehicle.** This Lease will be assigned to the Assignee identified on the other side. AHFC will administer this Lease. I agree to make all payments and perform all other obligations under this Lease to AHFC. I acknowledge that AHFC (and Assignee, if different) will not have to make any repairs, maintain the Vehicle or perform any of Dealer's duties under this Lease. AHFC has the power to act on behalf of Assignee to administer, enforce and defend this Lease.

**CREDIT REPORTING:** I authorize AHFC and its affiliates, at any time, to reinvestigate any information provided on my credit application and to verify my current credit standing and, in the course of doing so, request and receive credit bureau reports. If I default under this Lease, I authorize AHFC and its affiliates to make any credit inquiries AHFC and its affiliates deem appropriate, and understand that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency. I authorize AHFC and its affiliates and others to exchange credit, account, and financial information about me at any time, except to the extent I have instructed you otherwise.

**MODIFICATIONS/GOVERNING LAW:** This Lease sets forth all of the agreements between Lessor and Lessee for the lease of the Vehicle, and no modification of this Lease shall be valid unless it is made in writing and signed by Lessor and Lessee. If any provision of this Lease is unenforceable or invalid, that provision shall be severed from the remainder of the Lease and the validity and enforceability of the remaining provisions shall not be affected or impaired. This Lease is to be governed by the laws of the state of Dealer's business.

**SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS**

EXHIBIT B

# CERTIFICATE OF TITLE

## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY | TITLE SEQ. NO. |
|---|---|---|---|---|---|
| 5FNYF18708B027222 | 2008 | HONDA | PIL | UT | 5872621 |

| WEIGHT | CYL. | IF NEW, DATE FIRST SOLD | DATE ISSUED | ODOMETER | T.I.N. |
|---|---|---|---|---|---|
| 4524 | 06 NEW | 01/14/2008 | 02/14/2008 | 12 | 016772[illegible] |

*ACTUAL MILEAGE*

Owner(s)
HONDA LEASE TRUST
600 KELLY WAY
HOLYOKE MA 01040

HOLD TO LIGHT TO VIEW EAGLE WATERMARK

VOID IF ALTERED OR IF EAGLE WATERMARK IS ABSENT

**RELEASE OF LIEN**
(FIRST LIEN) Interest in the above described vehicle is hereby released.

First lienholder — Date released

Signature — Title (if any)

SECOND LIENHOLDER

**RELEASE OF LIEN**
(SECOND LIEN) Interest in the above described vehicle is hereby released.

Second lienholder — Date released

Signature — Title (if any)

DATE OF LIEN

[signature]
[illegible]

VOID UNLESS OFFICIALLY STAMPED.

This document is proof of your ownership of this vehicle. Keep it in a safe place, not with your license or registration or in your car. To dispose of your vehicle, complete the transfer section on the reverse and give the title to the new owner.

DIVISION OF MOTOR VEHICLES

# EXHIBIT C

**HONDA**

Financial Services

CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

7006 3450 0002 4421 4855

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006 See Reverse for Instructio

May 27, 2008

Tareu W Wehbe
6 Pine Tree Ln
Lincoln, RI 02865-0000

**RIGHTS OF DEFAULTING CONSUMER UNDER R**

Re: Account Number 104061233
2008 Honda Pilot
5FNYF18708B027222

Dear Tareu W Wehbe:

You are now past due in the amount of $922.92. You may cure your default in the above referenced account by paying American Honda Finance Corporation at the following address not more than twenty one (21) days after the date you sign for this letter or the date the post office last attempts to deliver it:

American Honda Finance Corporation
P O Box 7829
Philadelphia, PA 19101-7829

*Write your full account number on the check.*

- If you pay the amount within the time allowed you are no longer in default and may continue with the automobile lease agreement as though no default has occurred.
- If you do not cure your default within the time period stated above, we may sue you to obtain a judgment for the amount of the debt or may take possession of the automobile.
- If we take possession of the automobile, you may get it back by paying the full amount of your debt plus any reasonable expenses incurred by us if you make the payment within twenty (20) days after we take possession.

You have the right to cure a default only once in any twelve (12) month period during the period of the automobile lease agreement. If you default again within the next twelve (12) months in making your payments, we may exercise our rights without sending you another right to cure notice.

Our associates are available to assist you at (800) 807-7724. Thank you for your prompt attention to this matter.

Matthew Fahey
**American Honda Finance Corporation**
Customer Account Representative

RI1.doc (Rev. 07/07)