# EXHIBIT B

Citizens Bank

OPEN-END MORTGAGE

To secure present and future loans under Chapter 25 of Title 34 of the General Laws of Rhode Island

Home Equity Credit Line

THIS MORTGAGE (the "Security Instrument") is DATED 08/11/2007 .
The mortgagor(s) is/are
**TAREK WEHBE A/K/A TAREK W WEHBE**

**MATHILDA J WEHBE A/K/A MATHILDE J WEHBE**

the "Mortgagor". This Security Instrument is granted to the Mortgagee,
Citizens Bank of Rhode Island
a savings bank organized under the laws of the state where the Lender has its principal place of business,

whose address is 1 Citizens Plaza, Providence, RI 02903 ("Lender").

This Security Instrument secures to the Lender: (i) the repayment of the debt evidenced by a Home Equity Credit Line Agreement made in favor of the Lender by

TAREK W WEHBE

MATHILDA J WEHBE

and dated as of 08/11/2007 (the "Agreement"), including, but not limited to, any future advances, with interest thereon, made to the maker(s) of the Agreement by the Lender under ***Paragraph 1*** below, (ii) all renewals, extensions and modifications of the Agreement, (iii) the payment of all other sums, with interest, advanced under ***Paragraph 9*** below to protect the security of this Security Instrument, and (iv) the performance of the covenants and agreements under this Security Instrument and the Agreement.

The Agreement is an adjustable rate consumer revolving loan agreement, pursuant to which the Lender has agreed to lend money to the Mortgagor from time to time pursuant to an open-end credit plan.

The maximum amount secured by this Security Instrument is $1,000,000.00 of principal, plus interest thereon and all other charges and fees imposed by the Lender under the Agreement and this Security Instrument, including, but not limited to, amounts disbursed by the Lender under ***Paragraph 9*** below.

For this purpose, the Mortgagor, in consideration of the debt evidenced by the Agreement, does hereby mortgage, grant and convey to the Lender and the Lender's successors and assigns, with MORTGAGE COVENANTS, upon the STATUTORY CONDITION and with the STATUTORY POWER OF SALE, the following described property located in the County of NEWPORT , State or Commonwealth of :

**"See attached legal description hereto and made a part hereof."**

which has the address of 566 EAST SHORE ROAD, JAMESTOWN, RI 02835

(the "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property described above, and all easements, rights, appurtenances, fixtures and rents now or hereafter a part of or related to the property described above, all of which shall be deemed to be and remain a part of such property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing shall be referred to in this Security Instrument as the "Property."

ND modeed 00000117424439.ri4

John Bezubka, Jr.

THE MORTGAGOR COVENANTS that the Mortgagor is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for prior mortgages of record. The Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any prior mortgages of record.

The Mortgagor and the Lender covenant and agree as follows:

1. **Open-End Mortgage.** This Security Instrument is an open-end mortgage and the Lender shall have all the rights, powers and protections to which the holder of any open-end mortgage is entitled. The makers of the Agreement may borrow, repay and re-borrow such amounts as desired, subject to the terms and conditions of the Agreement. The amounts which the Mortgagor borrows and re-borrows under the Agreement shall be referred to in this Security Instrument as "Future Advances."

The Mortgagor agrees that each Future Advance shall be secured by and have priority under this Security Instrument as if such Future Advances were made as of the date this Security Instrument was recorded.

At no time shall the principal amount of the debt secured by this Security Instrument exceed the maximum principal amount of the Agreement, nor shall the maturity of Future Advances secured by this Security Instrument extend beyond the maturity date of the Agreement. All Future Advances shall be recorded on the books and records of the Lender.

2. **Future Advances Benefit Mortgagor Even If Mortgagor Is Not Also a Maker of the Agreement.** If a Mortgagor is not also a maker of the Agreement, such Mortgagor further agrees that (i) each Future Advance shall be considered as an advance for the benefit of such Mortgagor, and (ii) such Mortgagor shall be liable for the debt evidenced thereby, as if such Mortgagor had signed the Agreement; provided, however, that the extent of such Mortgagors liability for such debt shall be limited to such Mortgagor's interest in the Property, including, but not limited to, any rents, policies of hazard insurance maintained on the Property and any proceeds thereof, any award of damages on account of any condemnation for public use of or injury to the Property. With respect to such Mortgagor only, the Lender agrees to look solely to the Property and such rents, policies, proceeds and condemnation awards in satisfaction of the debt secured hereby.

The Lender and any other Mortgagor or maker(s) of the Agreement may agree to extend, modify, forbear or make any other accommodations with regard to the terms of this Security Instrument or the Agreement without such Mortgagor's consent and without releasing such Mortgagor or modifying this Security Instrument as to such Mortgagor's interest in the Property.

3. **Payment of Principal and Interest.** The Mortgagor shall promptly pay when due the principal of and the interest on the debt evidenced by the Agreement, and all other fees and charges as provided in the Agreement, and the principal of and interest on any Future Advances secured by this Security Instrument. This Security Instrument secures payment of the Agreement according to its terms which are incorporated by reference into this Security Instrument.

4. **Application of Payments.** Unless applicable law requires otherwise, all payments received by the Lender under this Security Instrument and the Agreement may be applied to reduce amounts owing to the Lender from the Mortgagor and from the maker(s) of the Agreement in the order the Lender, in its sole discretion, chooses, as provided in the Agreement.

5. **Variable Rate.** The Agreement provides for changes in the rate of finance charge, as more particularly described in the Agreement. All references to interest in this Security Instrument shall be to the variable rate of finance charge set forth in the Agreement.

6. **Prior Mortgages and Deeds of Trust; Charges; Liens.** The Mortgagor shall perform all of the Mortgagor's obligations under any prior mortgage of record, including the Mortgagor's covenants to make payments when due. The Mortgagor represents and warrants that no prior mortgage is in default and that no breach of condition thereof exists. The Mortgagor shall not modify, amend or extend any prior mortgage or the debt secured thereby without the written consent of the Lender. The Mortgagor shall pay or cause to be paid all taxes, assessments, and other charges, fines, and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any.

The Mortgagor shall not allow any lien or encumbrance to attach to the Property, other than the lien for unpaid real estate taxes not yet due and payable (the "Accrued Taxes") and any prior mortgage of record. Without limiting the scope of the foregoing, the Mortgagor shall promptly discharge any lien, other than the Accrued Taxes and any prior mortgage of record, which has priority over this Security Instrument unless the Mortgagor (i) in good faith contests the lien by, or defends against enforcement of the lien in, legal proceedings which, in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property, and (ii) deposits with the Lender money or other security acceptable to the Lender to satisfy the amount of such lien. If the Lender determines that any part of the Property is subject to a lien prohibited under this Security Instrument, the Lender may give the Mortgagor a notice identifying the lien, and the Mortgagor shall satisfy the lien or take one or more of the actions described above within ten (10) days of the giving of notice.

7. **Hazard or Property Insurance.** The Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as the Lender may require, including without limitations, flood insurance. This insurance shall be maintained in such amounts and for such periods as the Lender may require. Without limiting the foregoing, this insurance shall be maintained in an amount no less than the maximum principal amount of the Agreement plus all amounts secured by mortgages which have priority over this Security Instrument, unless the replacement value of the Property is less than this sum, in which case this insurance shall be for the full replacement value of the Property.

Where appropriate, the Lender may require the Mortgagor to maintain insurance against rent loss in addition to the insurance described above.

The insurance carrier providing the insurance shall be chosen by the Mortgagor subject to the Lender's approval which shall not be unreasonably withheld. All insurance policies and renewals shall be in form and content acceptable to the Lender, with such maximum deductible clauses as the Lender may require, and shall include a standard mortgagee clause in favor of and in a form acceptable to the Lender. The Lender shall have the right to hold the policies and renewals, subject to the terms of any prior mortgage of record.

All insurance policies and renewals shall provide that they may not be cancelled or diminished without ten (10) days' prior written notice to the Lender and not contain any disclaimer of the insurer's liability for failure to give such notice. If the Lender requires, the Mortgagor shall promptly give to the Lender all receipts of paid premiums and renewal notices. In the event of loss, the Mortgagor shall give prompt notice to the insurance carrier and the Lender. The Lender may make proof of loss if not made promptly by the Mortgagor.

Unless the Lender and the Mortgagor otherwise agree in writing, or unless otherwise required under the terms of any prior mortgage of record, casualty insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and the Lender's security is not lessened. If the restoration or repair is not economically feasible or the Lender's security would be lessened, the insurance proceeds shall be applied to the reduction of the indebtedness of the sums secured by this Security Instrument, whether or not then due, with any excess paid to the Mortgagor.

If the Mortgagor abandons the Property, or does not answer within thirty (30) days a notice from the Lender that the insurance carrier has offered to settle a claim of insurance benefits, then the Lender may collect and apply the insurance proceeds. The Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the Lender sends the notice to the Mortgagor.

Unless the Lender and the Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in **Paragraph 3** above or change the amount of the payments. If, under **Paragraph 19** below, the Property is acquired by the Lender, the Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to the Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**8. Preservation, Maintenance and Protection of Property; Mortgagor's Loan Application; Leaseholds.** The Mortgager shall keep the Property in good repair and shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste or permit any nuisance on the Property. The Mortgagor shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or the Lender's security interest.

The Mortgagor shall also be in default if the Mortgagor, during the loan application process, gave materially false or inaccurate information or statements to the Lender (or failed to provide the Lender with any material information) in connection with the loan evidenced by the Agreement.

The Mortgagor shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Mortgagor acquires fee title to the Property, the leasehold and the fee title shall not merge unless the Lender agrees to the merger in writing.

**9. Protection of Lender's Rights in the Property; Mortgage Insurance.** If the Mortgagor fails to perform the covenants and agreements contained in this Security Instrument promptly, or if there is a legal or administrative proceeding that, in the judgment of the Lender, may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then the Lender may do or pay for whatever the Lender determines is necessary to protect the value of the Property and the Lender's rights in the Property. The Lender's actions may include paying any sums secured by a lien whether or not it has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering (or causing its agent or independent contractor to enter) on the Property to make repairs. Although the Lender may take action under this ***Paragraph 9,*** the Lender does not have to do so. Any amounts disbursed by the Lender under this ***Paragraph 9*** shall become additional debt of the Mortgagor secured by this Security Instrument. Unless the Mortgagor and the Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the variable rate of interest applicable to the Agreement, and shall be payable, with interest, upon notice from the Lender to the Mortgagor requesting payment. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

If the Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, the Mortgagor shall pay the premiums required to maintain the mortgage insurance in effect until such time as the requirement for the mortgage insurance terminates in accordance with the Mortgagor's and the Lender's written agreement or applicable law.

**10. Inspection.** The Lender or its agent or independent contractor may make reasonable entries upon and inspections of the Property. The Lender shall give the Mortgagor reasonable notice prior to an inspection specifying reasonable cause for the inspection.

**11. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of part or all of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender subject to the terms of any prior mortgage of record or any other lien, mortgage or encumbrance which has priority over this Security Instrument.

In the event of a total taking of the Property, subject to the terms of any prior mortgage of record, the proceeds shall be applied to the sum secured by this Security Instrument, whether or not then due, with any excess paid to the Mortgagor. In the event of a partial taking of the Property, unless the Mortgagor and the Lender agrees in writing or otherwise required under the terms of any prior mortgage of record, the proceeds shall at the option of the Lender be applied toward the amounts secured hereby in such order as the Lender may determine or toward the repair, rebuilding or restoration of the Property upon such conditions as the Lender may require, or toward both of such purposes.

If the Property is abandoned by the Mortgagor, or if, after notice by the Lender to the Mortgagor that the condemnor offers to make an award or settle a claim for damages, the Mortgagor fails to respond to the Lender within thirty (30) days after the date the notice is given, the Lender is authorized subject to the terms of any prior mortgage of record, to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless the Lender and the Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in **Paragraph 3** above or change the amount of such payments.

**12. Mortgagor Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by the Lender to any maker(s) of the Agreement or to any successors in interest of the Mortgagor or of any such maker shall not operate to release the liability of the original Mortgagor or Mortgagor's successors in interest. The Lender shall not be required to (i) begin proceedings against any maker(s) of the Agreement or successors in interest of the Mortgagor or of any maker(s) of the Agreement, (ii) refuse to extend time for payment, or (iii) otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original maker(s) of the Agreement or any successor in interest of the Mortgagor or of such maker. The Lender's forbearance in exercising any right or remedy shall not be a waiver of or preclude the exercise of any such right or remedy.

**13. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of the Lender and the Mortgagor, subject to the provisions of **Paragraph 17** below. The Mortgagor's covenants and agreements shall be joint and several.

**14. Notices.** Any notice to the Mortgagor provided for in this Security instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the address as stated herein or any other address which the Mortgagor designates by written notice to the Lender. Any notice to the Lender, including notice pursuant to Sections 34-25-10(b) and 34-25-11 of the General Laws of Rhode Island, shall be given by first class mail to 1 Citizens Drive, Riverside, Rhode Island 02915 or to any other address which the Lender designates by notice to the Mortgagor. Any notice provided for in this Security Instrument shall be deemed to have been given to the Mortgagor or the Lender when delivered, or two (2) business days following mailing as provided in this **Paragraph 14.**

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Agreement are declared to be severable.

**16. Borrower's Copy.** The Borrower shall be given one copy of the Agreement and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in the Mortgagor, Assumption.** If the Mortgagor sells or transfers all or any part of the Property or any interest in the Property, (or if a beneficial interest in the Mortgagor is sold or transferred and the Mortgagor is not a natural person) without the Lender's prior written consent, the Lender will terminate the Lender's commitment to make Future Advances and will require immediate repayment in full of all sums secured by this Security Instrument, unless prohibited by applicable law. If Lender requires immediate payment in full under this paragraph, Lender will give mortgagor at least (30) days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If the mortgagor does not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving Mortgagor any further notice of demand for payment. Your rights under the Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**18. Optional Reinstatement of Security Instrument by Lender.** Notwithstanding the Lender's acceleration of the sums secured by this Security Instrument, the Lender may, in its sole discretion, discontinue any proceedings begun by the Lender to enforce this Security Instrument at any time prior to entry of a judgment enforcing this Security Instrument if: (i) the Mortgagor pays the Lender all sums which would be then due under this Security Instrument and the Agreement, had no acceleration occurred, (ii) the Mortgagor cures all breaches of any other covenants or agreements of the Mortgagor contained in this Security Instrument and in the Agreement, (iii) the Mortgagor pays all reasonable expenses incurred by the Lender in enforcing the covenants and agreements of the Mortgagor contained in this Security Instrument and in enforcing the Lender's remedies as provided in **Paragraph 19** below, including, but not limited to, reasonable attorneys fees, (iv) the Mortgagor, at the sole option of the Lender, executes a Mortgage Agreement and Deed Modification Agreement which will adjust the rate of interest on the Agreement and will provide such other terms and conditions as the Lender shall specify, including, but not limited to, a termination of the rights of the Maker(s) of the Agreement to Future Advances, and (v) the Mortgagor takes such actions as the Lender may require to assure that the lien of this Security Instrument, the Lender's interest in the Property and the Mortgagor's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. In the event that the Lender allows the Mortgagor to make such payments and cure this Security Instrument, this Security Instrument as modified and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. Nothing in this **Paragraph 18** shall be deemed to require the Lender to allow the Mortgagor to cure this Security Instrument or otherwise discontinue any proceedings begun by the Lender to enforce this Security Instrument.

**19. Acceleration; Remedies.** To the full extent permitted by law, upon a breach by the Mortgagor of any covenant in or condition of this Security Instrument or the Agreement or of any instrument executed in connection with this Security Instrument or the Agreement, the Lender may (i) require immediate payment in full of all sums secured by this Security Instrument without demand or notice, except as expressly prohibited by applicable law, and/or (ii) invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. The Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this **Paragraph 19**, including, but not limited to reasonable attorneys' fees, costs of title evidence, abstracts and title reports.

If the Lender invokes the STATUTORY POWER OF SALE, the Lender shall mail a copy of a notice of sale to the Mortgagor, and to other persons prescribed by applicable law, in the manner provided by applicable law. The Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. The Lender or its designees may purchase the Property at any sale and/or sell the Property in one or more parcels, as the Lender, in its sole discretion, deems appropriate. The proceeds of the sale shall be applied in the following order: (i) to all expenses of the sale, including, but not limited to, reasonable attorneys fees, (ii) to all sums secured by this Security Instrument; and (iii) any excess to the person or persons legally entitled to it.

**20. Assignment of Rents.** The Mortgagor unconditionally assigns and transfers to the Lender all the rents and revenues of the Property. The Mortgagor authorizes the Lender or the Lender's agents and/or independent contractors to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to the Lender or the Lender's agents and/or independent contractors. However, prior to the Lender's notice to the Mortgagor of the Mortgagor's breach of any covenant or agreement in this Security Instrument, the Mortgagor shall collect and receive all rents and revenues of the Property. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If the Lender gives notice of breach to the Mortgagor: (i) all rents received by the Mortgagor shall be held by the Mortgagor as trustee for the benefit of the Lender only, to be applied to the sums secured by the Security Instrument, (ii) the Lender shall be entitled to collect and receive all of the rents of the Property; and (iii) each tenant of the Property shall pay all rents due and unpaid to the Lender or the Lender's agent on the Lender's written demand to the tenant.

The Mortgagor has not executed any prior assignment of the rents, except in favor of the holder of the any prior mortgage of record, and has not and will not perform any act that would prevent the Lender from exercising its rights under this **Paragraph 20.**

The Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to the Mortgagor. However, the Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**21. Hazardous Substances.** The Mortgagor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. The Mortgagor shall not do, or allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the lawful presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

The Mortgagor shall give the Lender prompt written notice of any investigation, claim, demand, lawsuit or other action by any governmental regulatory agency or private party involving the Property and any Hazardous Substances or Environmental Law of which the Mortgagor has actual knowledge. If the Mortgagor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, the Mortgagor shall promptly take all necessary actions in accordance with applicable environment law.

As used in this **Paragraph 21,** "Hazardous Substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this **Paragraph 21,** "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**22. Loan Charges.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Mortgagor which exceeded permitted limits will be refunded to Mortgagor. The Lender may choose to make this refund by reducing the principal owed under the Agreement or by mailing a direct payment to Mortgagor. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Agreement.

**23. Legislation.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Security Instrument unenforceable according to its terms, the Lender, at its option, may (i) terminate its commitment to make Future Advances, (ii) require immediate payment in full of all sums secured by this Security Instrument, and/or (iii) invoke any remedies permitted by **Paragraph 19.**

**24. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void and the Lender shall release this Security Instrument without charge to the Mortgagor. The Mortgagor shall pay any recordation costs.

**25. Condominium and Planned Unit Development Provisions.** In the event the Property is a unit or units of a condominium or a planned unit development, the Mortgagor hereby covenants and agrees to the following as additional conditions of this Security Instrument.

(a) The Mortgagor shall promptly pay the Mortgagor's share of common expenses and all assessments as required by the Constituent Documents as the same become due and payable, and shall fully and faithfully keep and perform each and every covenant, agreement, and provision in such Constituent Documents. As used herein, the term "Constituent Documents" shall mean the master deed or declaration establishing the condominium or planned unit development, the documents establishing the governing body of such condominium or planned unit development (the "Association") or any by-laws, rules, regulations, or resolutions adopted pursuant to either thereof.

(b) If there is in force a master insurance policy insuring the Property against loss from fire and other hazards customarily included in extended coverage insurance in an amount sufficient to provide the full replacement cost coverage of the Property (exclusive of land) in such amounts and for such periods as the Lender may require, such insurance (together with such casualty insurance on the contents of the units as the Lender may require) shall satisfy the Mortgagor's obligations to the Lender under **Paragraph 7** above relating to hazard or property insurance, unless the Lender requires the Mortgagor to maintain additional insurance. The Lender shall be entitled to require the Mortgagor to maintain such additional insurance if the Lender determines that the Mortgagor's percentage interest in the proceeds of such a master policy inadequately protects the Lender's interest or if for any other reason the Lender deems such additional insurance appropriate. In the event of a casualty loss to or taking of the condominium or planned unit development or to any of the units therein:

(i) The Mortgagor shall immediately notify the Lender of such loss or taking.

(ii) The Lender may elect to vote under the terms of and as provided in the Constituent Documents in place and stead of the Mortgagor with respect to all matters of repair and restoration of the same, and with respect to the disposition of the insurance proceeds or condemnation proceeds, and the Mortgagor hereby irrevocably appoints the Lender as the Mortgagor's attorney-in-fact so to vote, which appointment as attorney in fact is coupled with the Lender's interest in the Property.

(iii) The Mortgagor will make all advances as required by the Association for repair and restoration due to inadequacy of insurance proceeds or taking proceeds, provided that it has been voted to proceed with such repair and restoration.

(iv) The Mortgagor assigns to the Lender its right to receive any insurance proceeds or other funds payable as a result of damage or condemnation and not applied to a restoration and agrees to pay to the Lender any such funds received by the Lender which are received by the Mortgagor.

(v) The Mortgagor shall take such actions as may be reasonably necessary to insure that the Association maintains public liability insurance in amounts and such forms as are acceptable to the Lender.

(c) The Mortgagor shall promptly deliver to the Lender a true and full copy of each and every notice of default received by the Mortgagor with respect to any obligation of the Mortgagor under the Constituent Documents.

(d) The Mortgagor shall not vote for or consent to any modification of, or amendment to, or relaxation in the enforcement of any provision of the Constituent Documents, without the prior written consent of the Lender. The Mortgagor shall not vote to petition or subdivide the condominium or planned unit development or vote to (i) abandon or terminate the condominium or planned unit development, (ii) terminate professional management of the condominium or the planned unit development, or (iii) take action which would render the insurance coverages maintained by the Association unacceptable to the Lender without, in each case, the prior written consent of the Lender.

**26. Default.** You will be in default under the Agreement if any of the following occurs, each of which constitutes a breach of a material obligation of yours under the Agreement:

(a) You fail to make any payment when due or to pay any charge or fee when due;

(b) Your action or failure to act adversely affects our security for your loan or a right we have in the security (an attempt by any other creditor to take money or other property of yours that is in our possession is an example of a failure to act that would adversely affect our security or security interest);

(c) A court determines that you are bankrupt or insolvent; or

(d) You gave or give us false or materially misleading information in connection with any extension of credit to you under your loan.

**27. Results of Default.** If you are in default, we may lower your credit limit, we may refuse to make any further advances under the Agreement, we may refuse to pay any outstanding checks that would require us to make an additional loan to you, we may foreclose on the real property described in this Mortgage, we may take whatever other action is permitted under this Mortgage, and we may exercise any and all of our rights with respect to any other property securing your loan. We also may demand that you pay the full amount you owe on your loan immediately. After default, we may assess interest at the increased rate of 2 percent per month on the outstanding principal balance of your loan until all amounts due are paid in full.

You agree to pay any costs we incur in collecting what you owe following your default. If we have to sue you to collect what you owe, you agree to pay our legal fees, including court costs. In addition to your other rights and remedies under this Mortgage and the Agreement, we reserve the right to honor the check or other device used to obtain an advance without permanently raising your credit limit. If we honor the check or other device, the amount that is more than your credit limit will be due and payable immediately.

**28. Waivers.** The Mortgagor waives all rights of homestead exemption in the Property and the benefits of any other similar laws which may be enacted from time to time and agrees that the homestead estate is subject to the rights of Lender under the Agreement and this Security Instrument and is subordinated to the lien of this Security Instrument.

**REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

The Mortgagor and the Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to the Lender, at the Lender's address stated herein, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, the Mortgagor accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by the Mortgagor and recorded with it.

A/K/A

TAREK WEHBE A/K/A TAREK W WEHBE

Mathilda J Wehbe A/K/A Mathilde J Wehbe

MATHILDA J WEHBE A/K/A MATHILDE J WEHBE

## INDIVIDUAL ACKNOWLEDGMENT

STATE OR COMMONWEALTH OF RI )
)SS:
COUNTY OF Providence )

On the 14th day of August, 2007, before me appeared

**TAREK WEHBE A/K/A TAREK W WEHBE**

to me personally known to be the person(s) whose name(s) is/are subscribed to this instrument, and such person(s) acknowledged that he/she/they (i) executed the same for the purposes therein contained, and (ii) executed this instrument as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

(Official Seal)

Notary Public
Print Name: Darlene Hart
My Commission expires: DARLENE D. HART
NOTARY PUBLIC
STATE OF RHODE ISLAND
MY COMMISSION EXPIRES ON 6-13-2009

## INDIVIDUAL ACKNOWLEDGMENT

STATE OR COMMONWEALTH OF RI )
)SS:
COUNTY OF Providence )

On the 14th day of August, 2007, before me appeared

**MATHILDA J WEHBE A/K/A MATHILDE J WEHBE**

to me personally known to be the person(s) whose name(s) is/are subscribed to this instrument, and such person(s) acknowledged that he/she/they (i) executed the same for the purposes therein contained, and (ii) executed this instrument as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

(Official Seal)

Notary Public
Print Name: Darlene Hart
My Commission expires: DARLENE D. HART
NOTARY PUBLIC
STATE OF RHODE ISLAND
MY COMMISSION EXPIRES ON 6-13-2009

Attention *Registry of Deeds/Town or City Clerk:*

Mail to: Citizens Bank
Consumer Finance Operations - RJW215
1 Citizens Drive
Riverside, RI 02915

TAK REV 12/05